## MARTIN *v.* SCHULTE.

[No. 26,213. Filed October 27, 1932. Rehearing denied February 22, 1933.]

George Panea, for appellant.
George E. Hershman, for appellee.

MYERS, J.—At the May primary, May 3, 1932, appellant and appellee, with eight other persons not parties to this action, sought the nomination on the Democratic ticket as a candidate at the coming November election for the office of representative in the United States Congress from the First Congressional District of Indiana. As the result of this primary, as shown by the return of the Board of Primary Election Commissioners of Lake County, appellant received 6,531 votes and appellee 6,858 votes. Thereafter, appellant filed with the auditor of Lake County his verified statement, which, after properly stating his qualifications as elector and eligibility for nomination on the Democratic ticket as the nominee of the Democratic party for the office of representative, in substance, shows that Lake County constitutes the First Congressional District; that at such primary at least 1,000 illegal votes were cast and counted for the contestee; that at least 1,000 legal votes were cast for appellant and not counted for him, and that he received a majority of all the legal votes; that in a number of precincts, naming them, there were illegal votes, totaling 733, and all counted for contestee.

Appellee entered a special appearance before the Board of Commissioners, and moved to dismiss the con-

test proceedings so by appellant commenced upon the grounds, in substance, following: that there is no law in Indiana authorizing a primary election contest for the nomination of a candidate on a party ticket for representative in Congress; that by Art. 1, §5, of our Federal Constitution, each House of Congress is the judge "of the elections, returns and qualifications of its own members." This motion was sustained. An appeal was taken to the Lake Circuit Court where the motion to dismiss was renewed and by the court sustained, and judgment for appellee. This ruling of the court is assigned as error.

From the above statement taken from the record in the instant case the dominant question seems to be: Does our primary law authorize the contest of a nomination for representative in Congress made pursuant to that law?

The primary law, with great particularity, has provided the procedure to be followed in nominating candidates for political office, but there is no express provision in this law for the contest of any nomination made pursuant thereto, unless its language is comprehensive enough to authorize the contest of nominations by virtue of the provisions of the general election law for contesting elections. Our primary law for the nomination of candidates to be elected by popular vote for certain specified offices is of purely statutory origin, and takes the place of all other and former methods of making these nominations. It was unknown to the common law and nominations thereunder are in no sense an election under that law. The words "nominations" and "elections" are not synonymous, and we must not assume that the legislature intended them to be so used.

It must be kept in mind that our consideration in the

instant case is limited by the written statement of contestor filed with the auditor alleging illegal votes counted for contestee and legal votes cast for contestor but not counted for him by primary precinct officers in charge of receiving and counting Democratic primary votes. Political party nominations are partisan presentation of candidates for final choice by the qualified electors to discharge the duties of public offices. In the case of *Newberry* v. *United States* (1921), 256 U. S. 232, 250, 41 Sup. Ct. 469, 472, 65 L. Ed. 913, it is said: "Primaries . . . are in no sense elections for an office but merely methods by which party adherents agree upon candidates whom they intend to offer and support for ultimate choice by all qualified electors. General provisions touching elections in constitutions or statutes are not necessarily applicable to primaries—the two things are radically different. And this view has been declared by many state courts. *People* v. *Cavanaugh* (1896), 112 California 674, 44 Pac. 1057; *State* v. *Erickson* (1912), 119 Minnesota 152, 137 N. W. 385; *State* v. *Taylor* (1909), 220 Missouri 618, 119 S. W. 373; *State* v. *Woodruff* (1902), 68 N. J. L. 89, 52 Atl. 294; *Commonwealth* v. *Wells* (1885), 110 Pa. St. 463, 1 Atl. 310; *Ledgerwood* v. *Pitts* (1909), 122 Tennessee 570, 125 S. W. 1036." See, also, *Nixon* v. *Condon* (1929), (D. C.) 34 F. (2d), 464, 470; *United States* v. *Seymour* (1931), (D. C.) 50 Fed. (2d), 930, 934.

Appellant, for his authority to maintain contest proceedings, points to §7612 Burns 1926, Acts 1881, Sp. S., p. 482, §81, General Election Law, and to §§7406 and 7439 Burns 1926, Acts 1915, p. 359, §§29, 61 of the Primary Law. These sections read as follows:

Section 7612, *supra:* "All contests for county and township offices shall be tried in the proper county; and all contests for district and circuit offices, not otherwise provided in this act, shall be tried in the county giving

the largest vote for such office at such election; and whenever any elector shall choose to contest such election he shall file with the auditor of the proper county, within ten days after such person has been declared elected, a written statement specifying the grounds of contest, verified by the affidavit of such elector."

Section 7406, *supra:* "The person receiving the highest vote at such primary as the candidate of any party for any office, determined under the rules herein provided, shall be the nominee of that party for such office, and his name, as such nominee, shall be placed on the official ballot at the following election."

Section 7439, *supra:* "The provisions of the statutes now in force in relation to the holding of elections, corrupt practices at elections and primaries, the solicitation of voters at the polls, the challenging of voters, the manner of conducting elections, of counting the ballots and making the return thereof, and all other kindred subjects, shall apply to all primaries insofar as they are consistent with this act, the intent of this act being to place the primary under the regulation and protection of the laws now in force as to elections. And in all cases not herein specified, it is the purpose of this act, so far as possible, to follow the provisions of the general election laws."

Since appellant's right to contest the nomination of appellee depends on statutory affirmance, he must assume the burden of the well-settled rule that one who seeks the benefit of a statute must, without the aid of any intendment, bring himself strictly within its spirit as well as its letter. *Board* v. *Jarnecke* (1905), 164 Ind. 658, 664, 74 N. E. 520; *Barker* v. *State* (1919), 188 Ind. 263, 267, 120 N. E. 593, and cases there cited; *Alyea* v. *State* (1926), 198 Ind. 364, 152 N. E. 801, 153 N. E. 775.

The section of the statute chosen by appellant upon

which to base his contest, it will be noticed, provides for the contest of duly declared elected county, township, district and circuit offices. He claims the office to which he sought the nomination on the Democratic ticket is within the class designated as district offices; that Lake County constitutes the First Congressional District, and the Primary Act, §7439, *supra,* is effective to incorporate the provisions of the general election law where necessary to supply any deficiency in the primary law essential in carrying out the objects and purposes of the law, one of which is to supply a remedy whereby the candidate receiving the highest number of legal votes at such primary may have his name placed upon the official ballot as the nominee of his party at the coming election.

While this state is divided into what is known as congressional districts, yet we have state senatorial, legislative and judicial district and circuit offices. Congressional district nominations are for federal offices. All other nominations under the primary law are for state, circuit, county, township and municipal offices. Our general election law has to do with the election of persons to office, both federal and those local to the state. The latter class only are subject to an election contest under this law. While our primary system governs nominations for certain political offices, among which are the nominees for Congress, yet, if elected, such nominee's election could not be contested under our state law, and in the absence of a specific statute authorizing the contest of such nomination, we hold that contests for nominations are limited to candidates for office who, if elected, would be subject to contest under our general election law providing the grounds and procedure for such contests.

Appellant seems to rely upon the case of *Beck* v. *Wetter* (1926), 197 Ind. 522, 151 N. E. 401. That case

was decided upon the theory that the primary law controls the organization of all political parties coming within its provisions.; that it provides for the election, not nomination, of precinct committeemen by popular vote, which is an office created by the primary law, and hence clearly within the provisions of §7597 Burns 1926. That case does not control the one at bar.

We therefore conclude that the statutory provisions relied on by appellant do not warrant a contest for the nomination of a candidate for the office of Congressman.

Judgment affirmed.

Treanor, J., dissents.

Martin, J., dissents.

### DISSENTING OPINION.

TREANOR, J., dissenting—In my opinion the effect of §§7436 and 7439 Burns Ann. Ind. St. 1926 is to give all entrants in primary elections the rights and privileges of candidates in general elections, including the right to contest the nomination of opponents. While it is clear that candidates for federal offices in regular elections are not included in the election contest statute, I do not think it follows that a candidate for a primary nomination for a federal office cannot contest the result of the primary. We should look to the list of authorized entrants in a primary to determine who can contest a primary result and to the election contest statute to determine the procedure to be followed in any such contest.