STATE EX REL. ROBERTSON ET AL. *v.* CIRCUIT COURT OF LAKE COUNTY ET AL.

[No. 27,160. Filed December 13, 1938. Rehearing denied January 3, 1939.]

*Edward H. Knight* and *Albert H. Cole,* for petitioners.

*Robert D. Armstrong* and *Harold R. Woodward,* for respondents.

TREMAIN, C. J.—This is an original action filed in this court by the State of Indiana on the relation of Joseph M. Robertson et al. against seven circuit courts and the judges thereof, to wit: Lake, Vigo, Vanderburgh, Marion, Franklin, Clark, and Vermillion counties. By permission, and upon their petition, the opposing candidates to the relators have been permitted to intervene as respondents.

It is alleged in the petition that a general election was held in the State of Indiana on November 8, 1938, for the purpose of electing state officers; that the relators and respondents received votes as follows:

TREASURER OF STATE

| Relator | Votes | Respondent | Votes |
|---|---|---|---|
| Joseph M. Robertson | 776,280 | Arthur H. Berndt | 771,875 |

SUPERINTENDENT OF PUBLIC INSTRUCTION

| | | | |
|---|---|---|---|
| Floyd I. McMurray | 780,062 | Norman J. Lasher | 768,983 |

CLERK OF THE SUPREME AND APPELLATE COURTS

| | | | |
|---|---|---|---|
| Paul Stump | 779,074 | Paul C. Wetter | 770,428 |

JUDGE SUPREME COURT, FIRST DISTRICT

| | | | |
|---|---|---|---|
| Curtis G. Shake | 775,606 | Arthur Rogers | 773,225 |

JUDGE SUPREME COURT, THIRD DISTRICT

| | | | |
|---|---|---|---|
| H. Nathan Swaim | 775,344 | Edgar M. Blessing | 772,187 |

JUDGE SUPREME COURT, FIFTH DISTRICT

| | | | |
|---|---|---|---|
| Michael L. Fansler | 774,629 | Harry L. Crumpacker | 771,879 |

JUDGES OF APPELLATE COURT, FIRST DISTRICT

| Relator | Votes | Respondent | Votes |
|---|---|---|---|
| A. Jewel Stevenson | 776,067 | Chauncey W. Duncan | 771,067 |
| William H. Bridwell | 776,453 | Edgar Durre | 769,832 |

JUDGES OF APPELLATE COURT, SECOND DISTRICT

| Huber M. DeVoss | 774,037 | Dan C. Flanagan | 772,376 |
|---|---|---|---|
| Harvey J. Curtis | 775,701 | Fred E. Hines | 770,814 |

AUDITOR OF STATE

| Frank G. Thompson | 776,992 | Louis R. Markum | 771,408 |
|---|---|---|---|

The vote of the respective candidates was certified to the Secretary of State, who issued certificates of election to the successful candidates, relators herein, executed by the Governor of the state.

T. Joseph Sullivan, John W. Gerdink, John W. Spencer, Jr., Earl R. Cox, Roscoe C. O'Byrne, George C. Kopp, and G. Edward Bingham are respectively the judges of the circuit courts named. The defeated candidates for said offices, on the 18th and 19th days of November, 1938, filed in said seven circuit courts separate petitions for a recount of the votes cast in each of said counties at the November election, 1938. Copies of the petitions filed by said respective candidates are filed as exhibits to the petition filed herein.

It is alleged that the circuit courts and the judges thereof, named as respondents herein, are without jurisdiction of the subject-matter of said recount proceedings instituted in said respective courts by the defeated candidates for the offices hereinbefore set out, for the reason that the petitions filed in said Vermillion, Franklin, and Clark Circuit Courts allege that said recounts and corrections of the vote cast for the respective offices at said election are sought pursuant to the provisions of chapter 47 of the Acts of the General Assembly of the State of Indiana adopted at a Special Session in 1881; that said statute does not authorize or contemplate a recount of votes cast for state officers by a proceeding filed in the circuit court; that said defeated candidates

have not asked in their petition for a recount of all the votes cast in the State of Indiana for the offices for which they were candidates at said general election; that, if it should be held that chapter 47 of the Acts of 1881 authorizes a recount, then the statute is unconstitutional and void for the reason that the General Assembly has no constitutional authority to enact special or local laws applicable to less than all counties of the state in respect to a determination of the result for a general election for state offices, and has no authority to delegate to a defeated candidate the right to select counties in which such special proceedings for recounts may be instituted; that in the petitions for recounts filed by the defeated candidates in Vanderburgh, Vigo, Lake, and Marion Circuit Courts, it is alleged that the proceedings are filed pursuant to the provisions of chapter 94 of the Acts of the General Assembly of the State of Indiana of 1921, sections 29-2111 to 29-2120 Burns' Ind. St. 1933 (§§7398 to 7407 Baldwin's 1934); that said act is unconstitutional and void for the reason that it violates sections 22 and 23 of Article 4 of the Constitution of the State of Indiana; that said statute attempts to provide for a recount of only part of the votes cast for the state officers at said election; that it attempts to provide for part only of the paper ballots cast at said general election, without providing for a recount of all the paper ballots cast throughout the state; that said chapter 94 of the Acts of 1921 is not general and uniform in its operation throughout the state, in that it attempts to make the certificate of a recount of the votes cast on paper ballots, in counties where both voting machines and paper ballots for state officers are used, prima facie proof of the facts therein recited in any contest proceeding and conclusive for all other purposes, notwithstanding there is no other statute in the state providing that the certificate of any such

recount shall be prima facie evidence thereof in any contest proceeding where paper ballots only are used; that said chapter 94, Acts 1921, is not of general and uniform application throughout the state.

It is alleged that the respondent circuit courts are attempting and threatening to assume jurisdiction in said respective causes and will do so unless prohibited by this court. Other allegations allege the necessity of issuing the temporary writ of prohibition which heretofore has been issued. The respondents have answered the petition and the cause is now before this court for final determination.

Each of the petitions for the recount, filed as an exhibit to relators' petition herein, alleged that each "petitioner desires to contest said election for said office by the remedy or remedies provided by law and available to your petitioner for contesting said election for said State Office."

The only question involved under the Constitution and the laws of this state is whether a circuit court has jurisdiction to entertain a proceeding for a recount and contest of an election of state officers. The jurisdiction and duties of a circuit court of the State of Indiana, and the methods prescribed by which the court shall exercise its jurisdiction, must be conferred by constitutional and legislative authority. If the Legislature has failed to prescribe a method for the recount and contest of the election of state officers by a proceeding instituted in a circuit court in the state, then such court is wholly without jurisdiction. The burden is upon those seeking such recount and contest proceeding in the circuit court to point out a law expressly vesting that authority in such courts. The common law made no provision for recount and contest of the ballots cast at an election. It is a familiar rule that statutes granting jurisdiction which was not given at

common law are to be strictly construed, and one seeking to take advantage of such statute must bring himself clearly within its spirit as well as within its letter. *Martin* v. *Schulte* (1933), 204 Ind. 431, 182 N. E. 703, and cases there cited.

Sutherland's Statutory Construction, Vol. 2, pp. 1048, 1049, secs. 565, 566, announces the rule as follows:

> "A statutory remedy or proceeding is confined to the very case provided for and extends to no other. It cannot be enlarged by construction; nor be made available or valid except on the statutory conditions, that is, by strictly following the directions of the act.
> "A party seeking the benefit of such a statute must bring himself strictly not only within the spirit but its letter; he can take nothing by intendment."

It is not doubted that a recount proceeding is ministerial and not judicial. The proceeding is a special statutory one. The respondents have the burden to point out a statute expressly authorizing the procedure which they have adopted and "must assume the burden of the well-settled rule that one who seeks the benefit of a statute must, without the aid of any intendment, bring himself strictly within its spirit as well as its letter." *Martin* v. *Schulte, supra,* page 435; *Williams* v. *Bell* (1915), 184 Ind. 156, 110 N. E. 753.

In *Layman* v. *Dixon* (1917), 63 Ind. App. 501, 114 N. E. 698, that court had under consideration a petition for a recount only of the ballots cast for the office of township trustee. The court there held that it is only when a candidate desires to contest an election that he may invoke the aid of the statute. The court pointed out that the Legislature expressly provided that the petition to recount must show "that he (the candidate) desires to contest such election." In the instant case the respondents, both in their brief and oral argument, appar-

ently claim the right to recount only, but, nevertheless, allege in their petitions that they desire to contest the election. This allegation is expressly provided by the statute and held to be necessary by the authorities cited above.

The defeated candidates, respondents herein, assert that as to the contest in the three counties where the vote was by paper ballot only, the authority is expressly granted to them to demand a recount, in the counties selected by· them, in a proceeding filed in the circuit court; that in the four counties where both voting machines and paper ballots are used, the same authority is granted by statute. In the first three counties, the authority, they assert, is granted by sections 61 to 65 of chapter 47 of the Acts of 1881, sections 29-2101 to 29-2105 Burns' Ind. St. 1933 (§§7388 to 7392 Baldwin's 1934), and as to the last four counties, the authority is granted by chapter 94 of the Acts of 1921, sections 29-2111 to 29-2120 Burns' Ind. St. 1933 (§§7398 to 7407 Baldwin's 1934).

As to the first proposition, the 1881 act provides (section 61, section 29-2101 Burns 1933, §7388 Baldwin's 1934) that "any candidate for office at such election desiring to contest the same, may petition in writing the Circuit Court, if in session, or the Judge thereof in vacation, for a recount of the *ballots cast* at such election, by three commissioners, to be appointed by the Court or Judge." The contention is that under this provision authority is granted to any candidate for a state office to proceed as provided by the statute for a recount of the ballots in the county chosen by the defeated candidate, and that the statute grants such authority without a recount of all the votes cast for the candidate in the state at large.

The statute uses the term "any candidate." The contestors assert that the word "any" is all-inclusive and

embraces candidates in any unit—that is, township, county, municipality, district, or the state, who may demand a recount of the ballots; and that the term is broad enough to permit any candidate to demand a recount of any part or portion of the unit in which the recount is had. There is no other reference in the statute with respect to state officers demanding a recount by a proceeding filed in a circuit court of the state. If this court is to give to the word "any" the broad construction placed upon it by the contestors, the same broad construction must be applied to the provision which immediately follows, that the recount must be "of the ballots cast at such election." *"The ballots"* must be construed as all-inclusive as is the word "any," and to include all of the ballots cast in the entire state. By giving the broad construction to both parts of this statute, the conclusion inevitably follows that the recount must be of all ballots cast in the state as a whole, or, in the case of the recount in lesser units, the recount must be of all the ballots cast in the entire unit. When the statute provided for a recount "of the ballots cast at such election," it did not mean ballots cast in one precinct, one township, or one county, when applied to a recount upon the part of a candidate for a state office to be elected by the people at large. The contestors will not be permitted to place a broad construction upon the word "any," used in the beginning of section 61 and a narrow construction upon the latter provisions of the same section. Other provisions of the statute are incompatible with the view that the Legislature intended the act to apply to a recount of less than the whole unit. "Each of the candidates may be present during said recount." (Section 63, chapter 47, Acts 1881, section 29-2103 Burns' 1933, §7390 Baldwin's 1934.) He could not be present in 92 counties of the state in event suits were filed in each. Section 69, chapter 47, Acts 1881,

section 29-2204 Burns 1933, provides that each party may be present, etc., in a hearing before the legislative committee.

The same reasoning with reference to the Act of 1881 applies with equal force to chapter 94 of the Acts of 1921, sections 29-2111 to 29-2120 Burns 1933 (§§7398-7407 Baldwin's, *supra*). That act does not contain an express grant to the courts of the state to entertain a petition for recounting a portion of any voting unit. There is no provision in any of the statutes pertaining to elections in this state whereby a candidate for office may petition a circuit court for a recount in a township of one precinct only, or in a county of one township or one precinct, or in a municipality of one precinct or one ward, or in the State of Indiana for a recount in seven counties, one county, one municipality, one township, or one precinct. On the contrary, the legislative enactments upon the subject clearly indicate the intention upon the part of the Legislature to recount all ballots cast at such election for or against the candidate demanding the recount. A search of the many decisions of this court involving recount and contest of elections reveals that in 122 years of its history it has never been contended or presented for judicial determination that a defeated candidate may demand and be entitled to a recount of less than the entire unit involved in the election. That is a proposition unheard of and unknown to the law in this state.

The respondents assert in Proposition II of their brief that "the recount statutes of the State of Indiana are an integral and component part of the election laws of the state." In Proposition IX they say that "the recount statutes are general laws and are not local or special laws." In this assertion they are correct. But, notwithstanding their premise that the election laws are general and not special in their application, they

assert a right to recount the ballots cast in seven counties, selected by them, in a state election, and from a recount of the seven counties only, ask that a candidate for a state office may be declared defeated or elected as revealed by that recount. As authority for their position they cite chapter 94 of the Acts of the General Assembly of 1921, sections 29-2111 to 29-2120 Burns' Ind. St. 1933, and assert that such proceeding is authorized. An examination of that chapter reveals the following title:

"An act to provide for recount and correction in township, city, county, circuit, district and state elections where voting machines and paper ballots are used."

The title of an act may limit the scope of an act, but it cannot broaden or extend the effect of the act as expressed in the body thereof.

Section 10 of this act, section 29-2120 Burns' Ind. St. 1933 (§7407 Baldwin's Ind. St. 1934), reads as follows:

"The provisions of this act shall not be construed as repealing or in conflict with any other laws now in existence upon the subject of recount of votes cast at any election whether cast on machines or by paper ballots but shall be construed as supplemental to any such law."

Since the act of 1921 is supplemental, it should be construed, if possible, so as not to be inconsistent with the act of 1881.

Section 1 of the Act of 1921 provides "for a recount of the votes cast within the bounds of the county wherein such court has jurisdiction." If this language must be construed as providing for a partial recount of the votes cast for a candidate elected in a state-wide election, the act is unconstitutional, for it is local and special, since there is no act providing for such a partial

recount in counties where paper ballots are used.

■ In construing statutes, courts will seek a construction that avoids unconstitutionality.

Section 2 provides for the filing of a petition by an unsuccessful candidate, which must contain an allegation "that he desires a recount and correction ■ of the votes cast on said machine, or machines, and the paper ballots cast, at said election for the office for which he was a candidate." If this last-quoted clause is construed as meaning *all* "ballots cast at said election for the office," and it is construed with the provision of section 1, providing "for a recount of the votes cast within the bounds of the county where such court has jurisdiction," and as limiting the jurisdiction to a recount in cases where "the votes cast within the bounds of the county" are *all* of the "ballots cast at said election for the office," the statute would be limited to recounts in elections for offices, all the votes for which are cast within the confines of one county. That much jurisdiction is clearly conferred by the statute, and a construction limiting the language used to such situations avoids unconstitutionality.

Such a constitutional construction does not authorize the thing which the respondents are asserting jurisdiction to do.

By section 10 the 1921 act is made a part and parcel of all other election laws then existing. It is pointed out in *Jordan* v. *Peacock* (1926), 84 Ind. App. 86, 150 N. E. 60, that the 1921 act provides for a recount of votes when both ballots and voting machines are used, and that the act is supplemental to and does not repeal existing laws upon the subject of recount of votes. Also see *Humphries* v. *Peacock* (1928), 88 Ind. App. 349, 164 N. E. 27. It is as much a part of the 1881 act as if

it had been contained in it from the date of its enactment.

Since the two acts must be read together, it will be noted that there remains the special provisions provided by the act of 1881 for recount and contest of elections, one by justices of the peace, others by commissioners, courts, and Legislature, depending upon the voting unit involved. Among the special provisions provided is the one specifying the manner of a contest for a state office before the General Assembly. There is nothing in . the act of 1921 to limit or abridge that provision of the 1881 act. In the enactment of the 1921 act the Legislature evidently had in mind all of the provisions of the 1881 act and entertained a definite purpose to make the 1921 act supplemental thereto. Knowing that the 1881 act made specific provisions for the recount and contest of a state election, it was entirely proper and necessary to embody in the title and body of the statute a reference to "state elections." This phrase added nothing to the law as then existing, but since the 1921 act, by its own terms, became a part of the 1881 act and must be read in connection with all of the provisions of the 1881 act, it necessarily follows and seems perfectly clear that the provision for the legislative procedure in reference to state offices remained and is unmodified and unlimited.

The respondents have called attention to no specific statute authorizing the procedure adopted by them, nor have they produced a decision of any court in this state upholding their contention. In the absence of such statute or court ruling they have cited, and, of course, rely upon, an opinion of the Attorney General of the State of Indiana given to the Legislature then in session under date of February 14, 1925, as found in Reports and Opinions of Attorney General of 1925 and 1926, page 671. This opinion was requested by the Legislature which then had before it a contest for the office of

Judge of the Supreme Court. The Legislature asked the Attorney General for an interpretation of the 1881 act.

The question before the Legislature was presented by a verified petition executed by an elector of the state, who alleged that in the general election of 1924 George K. Denton and Benjamin M. Willoughby were opposing candidates for the office of Judge of the Supreme Court of the State of Indiana; that a tabulation of all the votes cast in the state was certified to the Secretary of State, and by the Secretary of State to the Governor. The total tabulation revealed that Willoughby received 601,861 votes and Denton received 601,860 votes; that a certificate of election was issued by the Secretary of State and the Governor to Judge Willoughby. The petitioner alleged that there had been irregularity and malconduct of the boards of canvassers and the clerks of the circuit courts in six counties, naming them, and specifically alleged the fact concerning the alleged irregularity and misconduct in that the clerks of the respective six counties had certified to the Secretary of State totals of the vote cast in those counties which were incorrect, and, if corrected, Mr. Denton would have received a plurality in the entire state of 935 votes. There was a prayer that the Legislature then in session should proceed to hear and try the case as provided by section 69 of chapter 47 of the Acts of 1881, which reads as follows:

"Each house shall choose by a *viva voce* vote seven members of its own body, and the members thus selected shall constitute a committee to try and determine such contested election, and for that purpose shall hold their meetings publicly, at the capitol, at such time and place as they may designate, and may adjourn from day to day, or to a day certain, until such trial shall be determined; shall have power to send for persons and papers and *to take all necessary means to procure testimony,* extending like privileges to the contestor and the

contestee, and shall report their judgment in the premises to both branches of the General Assembly, which report shall be entered on the journals of the respective houses, and the judgment of such committee shall be conclusive; and if such election be adjudged invalid, such office shall be vacant."

The procedure provided by this section was followed. The legislative committee appointed to determine the matter asked the Attorney General for an opinion concerning the law applicable to the case. In an extended opinion the Attorney General reviewed the statute authorizing the procedure and pointed out that it was shown by the certificate of the Secretary of State that Judge Willoughby received one more vote than did his opponent, upon which a certificate of election was issued to him, and he qualified by taking office. After errors had been discovered in the six counties, which, if corrected, would have given the plurality to Mr. Denton, such corrections were made in the respective counties and new certificates were filed by the clerks of the courts with the Secretary of State. The Attorney General pointed out that the law provided for but one certificate from each county and did not provide for corrections or amendments of the returns. He then said:

"Whether or not there should be opportunities for corrections of returns is purely a question of legislative policy. In Indiana the policy as determined by the legislature is against correction of returns. The legislative reasons for such a policy apparently include the consideration that the opportunity for fraud in changing returns in case of a close vote should not be afforded and that it is better policy to permit errors to go uncorrected on the theory that honest errors will fairly well equalize themselves between contesting candidates rather than to place temptation before certifying officers by providing for the corrections of returns."

After citing a California case the Attorney General further said:

"Thus it appears that your committee is requested to consider corrected returns when there is no warrant in law for such returns."

He then pointed out that:

"Where the gist of the charge in specifications is that a candidate who failed to be declared elected received the highest number of votes cast the contestee is entitled to have the question thus presented determined by the best evidence as to what the total vote cast for each candidate actually was. . . . that all votes must be counted and that the contestee is entitled to have the facts determined by the best evidence, viz.: by the legal ballots themselves and by the results shown by voting machines where they are used.

". . . the absence of authority to your committee to grant the relief prayed for, that is, to declare Mr. Denton elected on the theory that he received the highest number of votes in the entire state, forces the conclusion that the legislature did not intend to authorize such a contest."

The Attorney General then pointed out that the elector who filed the proceedings evidently did so upon a construction of the statute that the legislative committee was authorized to review the election of Denton and Willoughby by a correction of the total votes cast in six counties only of the entire state. The Attorney General said upon that proposition:

"The construction evidently placed on said section (6998) by the elector who filed said specifications would render the same unconstitutional. It is clearly not competent for the legislature to empower a committee of its own members under a delegation of general powers to make a limited inquiry into the questions of who received the most votes, as it is asked to do in the specifications, and to determine who shall occupy the highest office in a co-ordinate branch of the government. Such an attempt would violate the constitutional principle on which the government is divided into co-ordinate branches, the chief officers of which are elected by the people, as provided by the constitution; an attempt to determine who of several candidates shall sit as a

judge of the supreme court by virtue of having received the highest number of votes *without counting all of the votes cast* would violate the constitutional right of the people to have their judges elected on the principle of universal suffrage."

Accordingly, the Attorney General advised the Legislature that it was without jurisdiction to entertain the petition filed, and the same was dismissed.

In the instant case the respondents are not only asking a recount and contest in but seven counties of the state, but they are asking this court to write into the statute something that is not there. They ask the court to say that "any candidate for office at such election" may have a recount in a state-wide election by a procedure filed in the circuit court of one county for a recount of the votes of that county only. As pointed out by the Attorney General in the Denton-Willoughby case, the recount of one county might have changed the result, but it would be unavailing in the face of a certificate executed by the Secretary of State to the candidate who received a plurality of all votes cast as shown by the record; that the only manner in which that question can be determined is by a count of all the votes cast in the state. There is as much reason to hold that a candidate for sheriff of a county may legally demand a recount and contest by counting the ballots cast in one township, or a candidate for mayor by recounting the ballots cast in one ward or precinct. If a candidate for state office may proceed as respondents have in the instant case, he may reduce the number to one county, one township, or one city ward. The absurdity of such proposition is at once apparent. Before this may be done, new action will have to be taken by the Legislature, which may include an amendment to the Constitution. To say the least, the election laws are

confusing and not coordinate. Without question a revision of the election laws is needed in this state.

By reading the 1881 and 1921 acts together, it is clear that, if a recount is contemplated, it must be had through a contest before the General Assembly, conducted by a legislative committee, and not otherwise.

Furthermore, in order to follow the respondents' course, there must be read into the statute a proviso expressly authorizing a recount of ballots cast in a state-wide election by filing a petition in a circuit court for the recount of the ballots cast in that county only. The statute does not now authorize that procedure. It is clear that such statute would be unconstitutional, but, because this case may be decided on other than constitutional grounds, it is unnecessary to discuss that question. The respondents have wholly failed to point to any statute authorizing a partial recount of all the votes cast in any unit, be it township, city, county, district, or state. Unless and until a constitutional statute can be furnished authorizing such procedure, it must be held that the seven circuit courts, respondents hereto, possessed no jurisdiction to hear or determine the matters presented by the several petitions filed asking for a recount of the votes in the particular county.

It is ordered that the temporary writ of prohibition heretofore issued be made permanent, and that each of the courts and the judges thereof, to wit: the circuit court of Lake, Vigo, Vanderburgh, Marion, Franklin, Clark, and Vermillion counties, be prohibited from hearing and determining the several petitions filed by their corespondents.

Shake, J., and Fansler, J., not participating.

### Concurring Opinion.

Roll, J.—I concur in the result reached in the prevailing opinion but cannot concur in all the reasons given therein.

These are original actions in this court in which the relators seek writs of prohibition to prohibit respondent circuit courts and the judges thereof from entertaining jurisdiction of petitions filed before them seeking a recount of the votes cast in their respective counties at the general election held November 8, 1938, for the office of United States Senate, and for all the state offices voted upon at said general election except that of Secretary of State.

The relator in Number 27,159 is Frederick Van Nuys, who is seeking to prohibit such proceedings in the seven named counties as to the votes cast for the office of United States Senator. The relators in Number 27160 are Joseph M. Robertson and ten other candidates for state offices who seek to prohibit the recount proceedings as to the votes cast for the said respective state officers in the said seven named counties. After lengthy oral arguments were had and memorandums filed, a temporary writ of prohibition was issued in each case. The question now presented is whether or not said temporary writ shall be dissolved or made permanent.

The responses filed by the various respondents show that verified petititons for a recount of the votes were filed in the respective counties of Lake, Vanderburgh, Vigo, Vermillion, Marion, Clark, and Franklin counties, and in no other counties in the state. No question here is presented as to the sufficiency of the several petitions filed in the said counties. The sole question presented in this action is one of jurisdiction. It is contended by the petitioners herein that the several circuit courts or the judge thereof have no jurisdiction to recount the

votes within the territorial limits of their respective counties in case of United State Senator or candidates for state office, while the respondents contend that the circuit court does have jurisdiction to conduct such recount proceedings and to recount the votes cast for the office of United States Senate and for state offices in their respective jurisdictions. Both the petitioners and respondents rely upon chapter 47, of the Acts of 1881 and chapter 94, Acts of 1921. Prior to 1881 there was no statutory provision for a recount of ballots cast at any election. The General Assembly of 1881 enacted chapter 47 and by this act made provisions for a recount of ballots cast at an election. The recount sections of this chapter are sections 61 to 65, inclusive. As far as we have been able to learn this is the first time since the enactment of this statute that the court has been called upon to apply the various provisions thereof to the election of United States Senate or to state offices, but has been invoked many times as shown by the decided cases in Indiana in contests for local offices. Section 61 of this act provides:

"At any time within ten days after the Thursday next succeeding any election, *any* candidate for office at such election desiring to contest the same may petition in writing the Circuit Court, if in session, or the Judge thereof in vacation, *for a recount of the ballots cast at such election,* by three commissioners, to be appointed by the Court or Judge, two of whom shall be of different political parties; . . ." (Our italics.)

Section 62 provides:

"Upon the petition of such candidate, duly verified, showing that he desires to contest such election, and honestly believes that there was a mistake or fraud committed in the official count, and that he desires *a recount of the ballots cast at said election for the office for which he was a candidate,* and upon proof that he has served a written notice upon the opposing candidate, of the time and place

of such application, five days before the hearing, and upon his furnishing a written undertaking, with sufficient freehold surety, that he will pay all the costs of such recount, the Court or Judge shall grant the prayer of said petition, and order said recount to be made." (Our italics.)

It is by virtue of the language found in section 61, to wit: *"any candidate for office at such election desiring to contest the same"* that the respondents herein base their contention that a candidate for United States Senate or candidate for state office may ask for a recount of the ballots cast at such election, and it is upon the language found in section 62 that said respondents contend that the recount is limited to the recounting of the ballots cast in the county in which the petition is filed. As stated above, the provisions of sections 61 to 65, inclusive, have been invoked many times in this state in contest proceedings for township and county offices. In the many cases found in our official reports, involving recount proceedings, we find no case where a part only of the ballots cast for the contesting parties were counted, but in every instance all of the votes cast for the particular office contested were recounted. Respondents in this case have not directed our attention to a single instance in which a recount of the votes were had for any office, where less than all of the votes cast for that particular office were recounted. In case of township trustees all of the votes cast in that particular township must be recounted although fraud be alleged in only a part of the precincts composing that township. Likewise in county offices where fraud is alleged to have occurred in certain designated precincts less than the whole, the recount of the voted are not limited to a recount of the precincts in which fraud or irregularity is alleged to have occurred, but all of the votes cast in the entire county are recounted. Thus it will be seen that the courts of Indiana since the enactment of the

1881 statute have universally and without a single exception construed this act as providing for a recount of all the ballots cast at the election for the particular office contested. The only authority for recounting all of the ballots cast flows from the language employed in said act. This is true even though the office voted for and being contested, involved more than one county, such as judge of circuit courts, where the circuit was composed of more than one county. As far as we are advised it has never been contended that less than all of the votes cast could determine who received the highest number of votes cast at such election. Indeed we find in section 64, Acts 1881, the following language:

> "When said recount is finished, the commissioners, or a majority of them, shall make out a certificate, under their hands, stating the number of votes that each of said candidates has received for said office in each township and precinct, and which of said candidates, as shown by the said recount, received the highest number of votes, and what his majority or plurality was, and said certificate shall be filed with the Clerk of the Circuit Court, and by him recorded in the order book of said Court. . . ."

Such a certificate could not be made without a recount of all the ballots cast of such candidates. Such a practical, universal and uniform interpretation of the statute over many, many years becomes binding upon the courts as a judicial interpretation thereof. It is provided by law who shall vote for designated offices. The suffrage for township trustees is limited to the legally qualified electors who reside within the geographical limits of the township. County offices, such as county auditor, county recorder, county treasurer and the like, are limited to the legally qualified electors living within the territorial limits of the county. The votes for city officials are limited to the qualified electors living within the corporate limits of the city. The judge of the circuit court is elected by the qualified electors living within

the boundaries of the judicial circuit. United States Senator and state officials are elected by the qualified electors living within the territorial boundaries of the entire state. The very foundation of our democratic form of government is based upon universal suffrage. For any court or commission or any other designated body to declare one of many opposing candidates elected to an office by a recount of less than all of the votes cast for that office would be in violation of the very fundamental constitutional rights of universal suffrage. This proposition was very forcefully expressed in an opinion delivered to the legislative contest committee when they were considering what is known as the Denton-Willoughby contest. We quote from the opinion of Arthur Gilliom, Attorney General of Indiana, found in Reports and Opinions of the Attorney General of Indiana 1925-1926, pages 671, 675, 676, 678, as follows:

"Furthermore the legislature has provided for recounts within a limited time in counties where errors are claimed, provision being made to recount votes cast both by ballot and voting machines. The result of such recount proceedings are available as evidence of what the vote actually was in contest proceedings. It is clear that when a contest is based on the theory that one candidate received a higher number of votes than did another, and provision has been made by the Legislature for a contest of that theory, that all votes must be counted and that the contestee is entitled to have the facts determined by the best evidence, viz: by the legal ballots themselves and by the results shown by voting machines where they are used.

" . . . . .

"It is clearly not competent for the Legislature to empower a committee of its own members under a delegation of general powers to make a limited inquiry into the questions of who received the most votes, as it is asked to do in the specifications, and to determine who shall occupy the highest office in a coordinate branch of the government. Such an attempt would violate the constitutional principle

on which the government is divided into coordinate branches, the chief officers of which are elected by the people, as provided by the constitution; and an attempt to determine who of several candidates shall sit as a judge of the Supreme Court by virtue of having received the highest number of votes without counting all of the votes cast would violate the constitutional right of the people to have their judges elected on the principle of universal suffrage. The presumption is that the legislature intended not to legislate in violation of the constitution of the State."

As stated above, the United States Senator and state officers are elected by all of the qualified electors of the state, and it would therefore seem clear that in order to give effect to the constitutional right of the people to elect such officers by universal suffrage no less than all the votes cast for the office could be permitted, as a limited inquiry into the question of who received the most votes would be in direct conflict with the above stated constitutional principle. To so hold would be identical with a holding that a candidate for any office elected by the entire suffrage of the state, could be elected by a limited suffrage in the first instance, which obviously could not be done. Therefore, taking into consideration the long and uniform interpretation of the act of 1881, *supra,* to the effect that in a recount proceeding all of the votes cast for the contested office must be recounted and upon the sound and fundamental principle as stated in the opinion of the Attorney General above quoted, we are forced to the conclusion that the act of 1881 contemplates the recount of all the votes cast for the offices embraced within its provisions, and it was not the legislative intent to permit a limited inquiry in recount proceedings. There are various provisions in the act of 1881 that are difficult to reconcile with the view that said act applies to or that the legislature ever intended for it to apply to candidates who are elected

by the entire suffrage of the state. For example the act provides that the order entered by the circuit court should provide, "that each of the candidates may be present during said recount." It would, of course, be impossible if a recount were had before the circuit court in each of the ninety-two counties of the state for the candidate to be present in each of said counties at the same time. We also call attention to section 64 quoted above with reference to the certificate made by the recount commissioners.

It will further be noted that no adequate provisions are made in said act whereby a circuit court in one county in which a contest proceeding was filed to secure the ballots from the other counties, but the fact that no adequate provisions are made or whether or not the provisions are adequate does not determine, however, the question of whether said act confers jurisdiction upon the various circuit courts to recount the ballots for said officers or for the office of United States Senate within their respective jurisdictions. But if jurisdiction is conferred upon circuit courts of this state or the Judges thereof, to recount the ballots cast for the office of United States Senate or for state offices, it is jurisdiction to count *all* the ballots cast in the entire state and not limited to a recount of the ballots cast in certain counties selected by the losing candidate.

Respondents contend that jurisdiction is conferred by language found in section 61 of said act of 1881 namely "any candidate" and says that this language is broad enough to include a candidate for the office of United States Senate and candidate for state office. This is true, but the whole act must be considered in order to grasp its true and proper meaning. If we give to the words "any candidate" their broad and all-inclusive meaning, the same broad and all-inclusive meaning should also be given to the phrase "a recount of the

ballots cast at said election" found in the same section and also the phrase "a recount of the ballots cast at said election for the office for which he was a candidate," found in section 62 of said act and hold that said phrases mean *all* the ballots and not a limited number of ballots. It could hardly be said with any degree of logic that in case where the entire suffrage of the state is exercised, that a recount of a part of the ballots would satisfy the demand of the language "a recount of the ballots cast at said election for the office for which he was a candidate." So, whether the act of 1881 be construed to embrace candidates for the office of United States Senate and candidates for State office or not, it follows that the circuit courts and the judges thereof who are respondents herein have no jurisdiction to conduct recount proceedings, which are limited to a recount of the votes cast within their jurisdiction.

The respondents seek to avoid the obvious interpretation above stated, namely, that the statute clearly contemplates the recount of all the ballots cast at the election for the office contested, by taking the position that the successful candidate had the right to institute proceedings in the remaining counties, and thus the aggregate would constitute all of the ballots counted. In short their position is that a successful candidate is given the right under the 1881 statute, *supra,* to contest his own election. This would be an anomalous situation for a successful candidate by a proceeding aided by the ancillary proceeding of a recount to seek to change the result which he obviously desired at the election. It would not only be an anomalous situation, but a very foolish one, for if the successful candidate, after he had succeeded in the election, if he did not desire the office, all he would need to do would be to resign or fail to qualify. To contest, Webster says means, "to strive to be elected; to dispute the declared result of an election."

So from the common sense interpretation of the word "contest" as used in election statutes, certainly does not contemplate that the successful party would institute a contest proceeding to contest his own election. It will also be noted that the statute of 1881, *supra,* as far as contest of election is concerned is a re-enactment of a former statute. Sections 61 to 65, inclusive, which are the recount sections, were incorporated in the act of 1881 and became the first statute authorizing recount proceedings of any kind. Section 66, which is the first provision of the contest portion of said statute, provides:

> "The election of any person *declared elected by* popular vote to any office whether state, county, township or municipal, may be contested by any elector who was entitled to vote for such person. The person contesting such election shall be known as the contestor; *the person whose election is contested,* as the contestee." (Our italics.)

The above section, read in connection with section 61, which is the first section of the recount statute, provides:

> "At any time within ten days after the Thursday next succeeding any election, any candidate for office at such election desiring to contest the same, may petition in writing the Circuit Court, if in session, or the Judge thereof in vacation, for a recount of the ballots cast at such election, . . ."

So the plain and obvious meaning of these provisions of the statute is that any candidate for office at such election desiring to contest the election of any person *declared elected,* may petition for a recount and the person whose election is contested would be known as the contestee and it would be clear that the candidate declared elected could not be both the contestor and the contestee. It seems to us so obvious from the whole tenor of the contest and recount statute of 1881 that the

legislature never contemplated that the successful candidate at an election should become the contestor under the provisions of the contest and recount statute. Such an interpretation and construction of the statute is in harmony with the conclusion reached in the first part of this opinion and answers the argument of the respondents to the effect that if contest proceedings are instituted by the unsuccessful candidates in certain counties of the state of their own selection, that the successful candidate might also institute proceedings in other counties if he believed fraud had been committed or a mistake in the counting was made, and that he had received more votes in such other counties than had been counted for him and thus procure a recount in all the counties of the state. Suppose that, in a contest proceeding for county office the successful candidate had been elected by only a few votes; the unsuccessful candidate institutes proceedings to contest and petition for a recount of the votes, alleging irregularity and mistake in the counting of the votes in certain voting precincts of the county. In such case it does not devolve upon the successful candidate to institute proceedings alleging fraud or mistake in the counting of the votes in other precincts of the same county in order to secure a recount of all the votes in the voting unit. This would be necessary as a logical consequence if respondents' position were logical, but according to our interpretation of the statute it would not be necessary for the successful candidate to institute such proceedings in order to secure a recount of all the ballots cast for that office in that election, for, if the unsuccessful candidates petition for a recount, he would know that all the ballots cast would be recounted, and thus secure a fair and equitable determination of the important question, to wit, who of the candidates received the highest number of votes cast. We can see no valid reason why the same

rule that has been applied by the courts of this state in every contest proceeding of which we have any knowledge should not also be applied in this case. In case of township, county, circuit or other local contest, and recount proceedings are had, all of the votes cast for that office have been recounted notwithstanding the fact that the petition for a recount designated only a part of the voting precincts in which fraud was alleged. So when a contest for a state office or for the office of United States Senator is being contested and a recount of the ballots asked in order to avoid a gross injustice to the successful candidate and to secure a fair and full determination of the question before one tribunal, where the same measuring stick would be applied to both parties alike, it would appear that equity and common sense would demand that all of the votes cast for such office should likewise be counted. This is not only equitable, just and fair, but is in accord with all of the decided cases in this state. It would be grossly unfair to attribute any other motive to the legislature in enacting the 1881 statute, to attribute such a motive, unless we found express words to that effect.

Respondents say that the election laws, including the statutes relating to contests and recounts, should receive a liberal construction in order to accomplish the purpose intended.

The right to a recount of ballots was unknown at common law. This right is of statutory origin, and the rule of law governing courts in cases such as the ones here presented was well stated by Myers, J., in the case of *Martin* v. *Schulte* (1932), 204 Ind. 431, 435, 182 N. E. 703, as follows:

"Since appellant's right to contest the nomination of appellee depends on statutory affirmance, he must assume the burden of the well-settled rule that one who seeks the benefit of a statute must, without the aid of any intendment, bring himself strictly

> within its spirit as well as its letter. *Board* v.
> *Jarnecke* (1905), 164 Ind. 658, 664, 74 N. E. 520;
> *Barker* v. *State* (1919), 188 Ind. 263, 267, 120 N. E.
> 593, and cases there cited; *Alyea* v. *State* (1926),
> 198 Ind. 364, 152 N. E. 801, 153 N. E. 775."

And so with the parties here who seek to have a partial recount, they must point to some statutory provision which confers such right upon them without the aid of any intendment. No such provision is pointed to by the respondents in the act of 1881, and we have been unable to find any.

We, therefore, conclude that a contest proceeding, regardless of the office contested, necessarily brings before the tribunal authorized to recount the ballots all ballots cast for that office and thus uniformity is preserved and any other construction would violate the right of universal suffrage guaranteed to the people by our constitution, and we further conclude that a successful candidate cannot contest his own election, but only an elector or unsuccessful candidate can institute such proceedings.

The only other statute involved in this proceeding is chapter 94 of the Acts of 1921. The title of this act is, "An Act to provide for recount and correction in township, city, county, circuit, district and state elections where voting machines and paper ballots are used." This statute affects the recount in the counties of Lake, Marion, Vigo, and Vanderburgh, as these are the only counties in which contest proceedings have been filed by the losing candidates which used both voting machines and paper ballots in registering the votes cast at the election of November 8, 1938. The first section of this statute provides:

> "That at any time within ten (10) days after the Thursday next succeeding any election, wherein the votes are cast by means of voting machines and paper ballots, any candidate for office at such

elections, desiring to contest the same, may petition in writing, the circuit court, if in session, or the judge thereof in vacation, *for a recount of the votes cast within the bounds of the county wherein such court has jurisdiction.*" (Our italics.)

The second section directs and states what shall be alleged in the petition; the third section provides the time for the hearing of said petition; the fourth section makes provision for the appointment of a recount commission to assist the court in the recount and the correction of the votes and provides for watchers and fixes the compensation to be paid; section five provides for the manner of recount; section six provides for the issuance of a certificate by the recount commission stating the number of votes received by each candidate and the recording of such certificate in the order book of the court and provides that such certificate or the record thereof shall be prima facie proof of the facts therein recited in any contest proceeding; section seven provides for the safe custody of the election machines and the ballots and other records; section eight provides for the payment of costs; section nine has to do with the jurisdiction of superior courts in recount proceedings; section ten provides that the act shall be construed supplemental to other laws; and the last section, section eleven, is an emergency clause.

It is contended by the petitioners herein that the act of 1921 is unconstitutional, being in violation of section 22, article 4, of the constitution of Indiana, which provides:

"The General Assembly shall not pass local or special laws in any of the following enumerated cases, that is to say; . . ."

Sub-section 16 provides:

"Providing for opening and conducting elections of state, county, or township officers, and designating the places of voting."

Also section 23, article 14, of the constitution of Indiana, which provides:

"In all the cases enumerated in the preceding section, and in all other cases where a general law can be made applicable, all laws shall be general, and of uniform operation throughout the state."

It must be conceded that the provision concerning elections includes within its spirit the requirement of uniformity of procedure in determining the results of elections. The harm arising out of local or special laws is not in the fact that they are local and special, but the harm is in the lack of uniformity in operation. The respondents contend that counties using voting machines or both voting machines and paper ballots form a class sufficient to justify a classification of such counties, and, therefore, counties using both voting machines and paper ballots constitute a distinct class, that would justify a class for legislative purposes. The existence of certain facts such as the use of voting machines and paper ballots in certain counties might form a proper basis for classifying such counties for certain purposes and not for other purposes. The fact that voting machines are used in certain counties and not in others, together with the further fact that voting machines are complicated mechanical devices, such that an ordinary layman might not be competent to inspect and tabulate the votes registered by such complicated machines or to determine whether or not the machine properly registered the votes as cast, or whether or not the machine had been unlawfully tampered with, would, we think, furnish a proper basis for legislative classification as to the method provided for the recounting of the votes. The legislature might reasonably classify such counties for the purpose of setting up special methods of rechecking or recounting the votes tabulated in such counties and might very properly delegate to

such a special commission the right to recount the paper ballots cast in such counties. Such a classification, we think, would be reasonable and constitutional. But another question is presented in this case and that is: conceding the right of the legislature to classify counties using voting machines or voting machines and paper ballots, for the purpose of providing for a special method of tabulating the votes or recounting the votes in such counties different from that provided for in other counties, can such classification furnish a proper basis for classifying the counties as to the *right* of a recount?

The subject of the act of 1921 is *recount,* and not the method used in recounting the votes cast. The first section of this act purports to grant the *right* to recount the ballots cast for a candidate for state office within the limits of the county when voting machines and paper ballots are used, but does not grant that right in any other county. Does the fact that voting machines are used in certain counties or voting machines and paper ballots used in certain counties furnish a sound basis for classifying those counties into a group and giving an unsuccessful candidate at an election the right to have the votes recounted in such counties and not in others, furnish a proper basis for such classification? The *right* given by the statute for a recount is one thing, while the method employed in making the recount is another. They are entirely and fundamentally different. The right to a recount is the substantive right, while the method used in recounting is the adjective part of the law and constitutes the machinery to secure the substantive right granted. Suppose that all of the large counties of the State of Indiana vote either by voting machines or by combinations of voting machines and paper ballots and were heavily inclined to one major political party and all the smaller counties used paper ballots only and were

inclined to the opposite political party and the legislature would enact a law granting the right to a recount in all counties using voting machines or in all counties using a combination of voting machines and paper ballots, and denied the right of a recount in the smaller counties using only paper ballots. It is obvious beyond argument that such a law would be a special and local law and would violate the letter and spirit of the constitutional provision relating to local and special laws and would permit the very thing that the constitutional provisions herein referred to were designated to prevent. So that is in effect what the 1921 statute accomplishes. It purports to grant the right to a recount of ballots in certain counties, to wit: those using voting machines and paper ballots, and makes no provision for a recount of ballots in counties using paper ballots only.

There is nothing inherent in the use of voting machines or in using voting machines in connection with paper ballots that could possibly furnish a proper basis for classifying such counties with reference to the right to have a recount. While such facts might furnish a proper basis for classifying such counties as to the method employed or the machinery set up for effecting such a recount. The right to have ballots recounted as stated above is a far different subject than the subject of "method used" in the recounting of ballots, and while such facts may furnish a proper basis for one classification is no argument that it furnishes a proper basis for the other. It seems clear that the act of 1921 in so far as it purports to grant the right of a recount of ballots within the territorial limits of the county and denies the right to a recount in other counties not coming within the purview of the statute is clearly a local and special law and is violative of the above named constitutional provisions of Indiana. Any construction of the act of 1881 or the act of 1921, which permits an unsuc-

cessful candidate to choose the counties in which a recount of the ballots will be had to the exclusion of all others has the same effect as though the legislature itself had made the choice by legislative enactment. If the legislature has no such power it then cannot delegate or vest in any unsuccessful candidate the power to make such a choice. By the act of 1921 the legislature attempted to classify counties using both voting machines and paper ballots and granting to an unsuccessful candidate the right to effect a recount in any of such counties to the exclusion of all others. Such facts furnish no basis whatever for making such a classification. In the case of *Bedford Stone Quarries Company* v. *Bough* (1907), 168 Ind. 671, 674, 80 N. E. 529, this court said:

> "The legislature may make a classification for legislative purposes, but it must have some reasonable basis upon which to stand. It is evident that differences which would serve for a classification for some purposes would furnish no reason for a classification for legislative purposes. Such legislation must not only operate equally upon all within the class, but the classification must furnish a reason for and justify the making of the class; that is, the reason for the classification must inhere in the subject-matter, and rest upon some reason which is natural and substantial, and not artificial."

Many cases in Indiana might be cited in support of the above rule, but the rule is so uniform and so clearly stated in the above case and is adhered to in all of our cases upon that subject that further citations are unnecessary.

Our conclusion is that the act of 1881, if it grants the right to a recount of ballots cast either for the office of United States Senate or state officers, it clearly contemplates that all of the ballots cast should be recounted and no limited or partial recount is either expressly or by reasonable inference provided for in said statute,

and, therefore, no jurisdiction is in any of the respondent circuit courts to proceed with the recount of ballots cast in their respective jurisdictions only, which is sought to be done by the petitions filed, and that the contestors have not attempted to invoke the jurisdiction of any of the respondents to recount all the votes cast for the respective offices; and we further conclude that the act of 1921, chapter 94, is void and unconstitutional and violative of section 22, article 4, and section 23, of article 4, of the constitution of Indiana in that it constitutes a special and local law granting to certain counties the right to recount ballots for state officers and for the office of United States Senator, cast in their respective jurisdictions and makes no provision for the recount of all the ballots cast in the state for such offices and in so far as said act attempts to confer such right the same is unconstitutional and void.