JOSEPH J. DINAN & others vs. SIMON SWIG.

Suffolk.   March 20, 1916. — April 6, 1916.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, CROSBY, PIERCE, &
CARROLL, JJ.

*Constitutional Law.   Elections.   Legislature.   House of Representatives.   Cor-
rupt Practices.*

So much of St. 1914, c. 783, § 10, as undertakes to impose upon the courts the duty
of inquiry into corrupt practices in connection with the election of members of
the General Court is contrary to c. 1, § 3, art. 10, of the Constitution, which
provides that "The House of Representatives shall be the judge of the returns,
elections, and qualifications of its own members," and also to art. 30 of the Dec-
laration of Rights, which declares the separation of the legislative and judicial
departments of the government.

RUGG, C. J.   This is a petition brought under St. 1913, c. 835,
§ 369, as amended by St. 1914, c. 783, § 10, which relates to cor-
rupt practices in elections, against the respondent, who was elected
a member of the General Court of the Commonwealth for 1916.
Summarily stated, the statute, so far as here material, requires
that, upon petition of five or more voters having reasonable cause
to believe that there has been committed by a successful candi-
date, (for whom they had a right to vote,) in connection with his
election or in his interest and behalf a corrupt practice as defined
in the act, three judges of the Superior Court shall investigate
the election.   If after a hearing it is found that such corrupt prac-
tice has been committed, then the court is given power to enter a
decree, § 10 (g), "declaring void the election of the defendant to
the office in question, and ousting and excluding him from such
office and declaring the office vacant: providing, however, that if
an election petition is brought to investigate the election of a
member of the Senate or House of Representatives of the Com-
monwealth, or of the United States Congress, and the court or a
majority of them shall find that violations of this act have been
committed with reference to such election, of such a nature that a
decree would otherwise be entered declaring void the election or
ousting or excluding the candidate from such office and declaring

the office vacant, the court shall, subject to the limitations and conditions hereinbefore prescribed, enter a decree declaring that with respect to the election of the said candidate a corrupt practice was committed and setting forth the facts relative to such finding, and shall forthwith certify the decree and declaration to the Secretary of the Commonwealth, to be by him transmitted to the presiding officer of the legislative body to which the defendant was elected."

Proceedings have been had in accordance with the terms of this statute and a finding with appropriate details has been made that the respondent, elected a member of the House of Representatives of the Commonwealth, committed corrupt practices in connection with his election. The three judges * then reported to this court among other matters the question whether the statute is constitutional so far as it imposes duties upon the court with reference to the election of a member of the Legislature.

The pertinent provision of the Constitution is in c. 1, § 3, art. 10: "The House of Representatives shall be the judge of the returns, elections, and qualifications of its own members, as pointed out in the Constitution. . . ."

The power to pass upon the election and qualification of its own members thus is vested exclusively in each branch of the General Court. No other department of the government has any authority under the Constitution to adjudicate upon that subject. The grant of power is comprehensive, full and complete. It is necessarily exclusive, for the Constitution contains no words permitting either branch of the Legislature to delegate or share that power. It must remain where the sovereign authority of the State has placed it. General phrases elsewhere in the Constitution, which in the absence of an explicit imposition of power and duty would permit the enactment of laws to govern the subject, cannot narrow or impair the positive declaration of the people's will that this power is vested solely in the Senate and House respectively. It is a prerogative belonging to each house, which each alone can exercise. It is not susceptible of being deputed. As was said by Chief Justice Gray in *Peabody* v. *School Committee of Boston,* 115 Mass. 383, at page 384: "It cannot be doubted that either branch of the Legislature is thus made the final and exclu-

* *Fox, Jenney, & McLaughlin,* JJ.

sive judge of all questions whether of law or of fact, respecting such elections, returns or qualifications, so far as they are involved in the determination of the right of any person to be a member thereof."

If the statute should be construed as conferring upon the three judges of the Superior Court final jurisdiction to pass upon the issue whether a successful candidate had been guilty of corrupt practices, it would be in derogation of the express grant of the Constitution because it would deprive each branch of the Legislature of the unlimited right to be "the judge of the . . . elections, and qualifications of its own members." No legislative body can be the sole judge of the election and qualifications of its members when it is obliged to accept as final a decision touching the purity of the election of one of its members made by another department of the government in an inquiry to which that legislative body is not a party and which it has not caused to be instituted.

The proceeding created by the instant statute does not emanate from either branch of the Legislature. It is set in motion only by the initiative of five or more voters. It may result in sending to the legislative branch, to which the defendant has been elected, a decree setting forth the determination of the judges that a corrupt practice has been committed. That decree may be ignored by the branch of the Legislature to which it is sent. There is no legal compulsion resting upon that branch to take action respecting such decree. Only its sense of self respect and duty to the whole Commonwealth to purge itself of a member unworthy of his office would impel it to pay heed to the decree. If action should be taken, it still would be open for that branch of the Legislature to exercise its constitutional prerogative and to examine the whole issue for itself and to decide whether the election and qualification of the member were such that he ought to be expelled and the election declared void. That decision, when made by the branch of the legislature concerned, would stand as final and could not be disputed or revised by any court or authority. *Coffin* v. *Coffin,* 4 Mass. 1, 34–36. *Opinion of the Justices,* 10 Gray, 613, 623. *Hiss* v. *Bartlett,* 3 Gray, 468, 472, 475. Such decision would nullify the efficacy of the finding of the facts set forth in the decree of the three judges of the Superior Court.

The Constitution confers upon each branch of the Legislature by necessary implication the power to determine for itself the procedure as to settlement of controversies touching the election and qualification of its own members, and the ascertainment of all facts relative thereto, and to change the same at will. That established by one branch might differ from that adopted by the other. But the statute, so long as it stands, imposes upon both branches uniformity of procedure so far as concerns this particular matter. One branch cannot ignore it without a repeal of the statute. A repeal can be accomplished only by affirmative vote of both branches and approval by the governor. Yet the Constitution plainly gives to each branch of each successive Legislature an untrammelled power to proceed in its own manner and according to its own judgment without seeking the concurrence or approval of the other branch, or of the executive. This discretion to determine the method of procedure cannot under the Constitution be abrogated by action taken by an earlier Legislature.

The only way open to either branch of the Legislature under the Constitution to obtain the assistance of the judicial department of government in the performance of the duties reposed in it by the Constitution is under c. 3, art 2. That goes no further than to enable either branch to secure the advice of the justices of the Supreme Judicial Court "upon important questions of law, and upon solemn occasions." It does not extend to the determination of questions of fact. It does not authorize the imposition upon the courts of functions vested by the Constitution exclusively in other departments of government. *Case of Supervisors of Election,* 114 Mass. 247. *Boston* v. *Chelsea,* 212 Mass. 127.

The statute cannot be supported by c. 1, § 3, art. 11, of the Constitution. The final paragraph of that article is: "And the Senate and House of Representatives may try and determine all cases where their rights and privileges are concerned, and which, by the Constitution, they have authority to try and determine, by committees of their own members, or in such other way as they may respectively think best." It is still "the Senate and House of Representatives" which must hold the trial and make the decision. The Senate or House of Representatives of any particular Legislature to which the question may be presented has the power to decide whether to try such cases by "committees of their own mem-

bers, or in such other way as they may respectively think best." This grant of absolute power cannot be fettered by the opinion of both branches of some preceding Legislature expressed in a statute. Each branch of the Legislature may try and determine the question as to violation of the corrupt practices act by a committee of its own members or doubtless by a committee otherwise constituted. But it cannot require the judiciary as a co-ordinate department of government to hold a trial and render a decision which in its nature must be purely tentative or advisory and wholly subject to its own review, revision, retrial or inaction. This would be imposing upon the judicial department of the government the investigation of a matter not resulting in a judgment, not finally fixing the rights of parties and not ultimately determining a state of facts. It would subject a proceeding arising in a court to modification, suspension, annulment or affirmation by a part of the legislative department of government before it would possess any definitive force. Manifestly this is in contravention of art. 30 of the Declaration of Rights which marks the entire separation of the legislative and judicial departments of the government. *Denny* v. *Mattoon,* 2 Allen, 361, 379. *Opinion of the Justices,* 201 Mass. 609, 612.

The statute cannot be upheld upon the ground which supports the appointment of commissioners to perform duties lying close to the line between the legislative and judicial faculties, but partaking chiefly of the latter nature, illustrated by *Boston, petitioner,* 221 Mass. 468, 474, and cases there collected, *Northampton Bridge Case,* 116 Mass. 442, *Brayton* v. *Fall River,* 124 Mass. 95, *County Commissioners, petitioners,* 140 Mass. 181, *In re Metropolitan Park Commissioners, petitioners,* 209 Mass. 381, and similar cases. In all those cases the Legislature reserves no power of revision, but the whole matter proceeds to a final judgment in the courts.

For these reasons we are constrained to hold that so much of St. 1914, c. 783, § 10, as undertakes to impose upon the courts the duty of simple inquiry into corrupt practices in connection with the election of members of the General Court is contrary to the terms of the Constitution. No opinion is intimated as to the validity of other parts of the act. It is unnecessary to consider the other questions reported.

It follows that the first question,* so far as relates to the proceeding at bar, must be answered in the negative.

*So ordered.*

The case was argued at the bar in March, 1916, before *Rugg,* C. J., *Braley, De Courcy, Pierce, & Carroll,* JJ., and afterwards was submitted on briefs to all the justices.

*J. P. Walsh,* (*G. F. Grimes* with him,) for the petitioners.

*H. Parker,* for the respondent.

───────────

* The first question reported by the three judges was as follows: " 1. Is St. 1914, c. 783, as far as it imposes duties upon this [the Superior] court with reference to a member of the Legislature, valid? "