## TUCKER v. BAGBY.

### No. 11363.

Court of Civil Appeals of Texas. Dallas.

Aug. 24, 1932.

Thomas B. Love, of Dallas, for relator.

C. O. Bagby, in pro. per.

JONES, C. J.

Relator, Oney Clenton Tucker, resides within the territory of election precinct No. 73, a rural voting box in Dallas county, Tex. Respondent, C. O. Bagby, is the duly appointed and acting election judge for such voting precinct and as such election judge will preside over the primary election to be held by the Democratic Party on August 27, 1932, and was such election judge and so presided in the previous July primary. Relator offered to vote in the July primary, but was refused such right by respondent, and will be refused such right by respondent in the Democratic primary election of August 27th.

This suit was filed by relator as an original action in this court, for the issuance of a writ of mandamus to compel respondent to accept relator's ballot in such primary. The

petition for mandamus is full and complete and shows relator's right to participate as a voter in the coming Democratic primary election in such precinct, unless the fact that he will not become twenty-one years of age until September, 1932, warrants respondent in the action he took in the July primary and in the action he intends to take in the August primary. The undisputed facts in the record show the allegations in the petition to be true.

The question at issue is: Can an otherwise duly qualified voter participate in a primary election before he has attained the age of twenty-one years, provided he does attain such age before the succeeding general election? Such issue must be determined from a construction of the statutes governing primary elections. The term "election," as used in the Constitution, has been held by the Supreme Court, in the case of Koy v. Schneider, 110 Tex. 369, 218 S. W. 479, 221 S. W. 880, to comprehend only general elections, and to have no application to primary elections. Hence the constitutional provision (article 6, § 2) prescribing the qualifications of voters in elections has no controlling effect in this case, and likewise the statutory general definition of a qualified elector, unless made specifically to apply to party primaries.

Article 236 of the Revised Criminal Statutes of this state (Penal Code) provides that: "Any person voting at any primary election called and held by authority of. any political party for the purpose of nominating candidates of such political party for any public office who is not qualified to vote in the election precinct where he offers to vote at the next State, county or municipal election, * * * shall be fined not exceeding five hundred dollars, or be imprisoned in jail not exceeding sixty days, or both." This statute was originally enacted in 1895, as a part of the first primary election law of this state, and has been carried forward in each codification of the laws of this state since its enactment, though the other provisions of the primary election law, enacted at such time, have been entirely superseded by various legislative amendments.

It will be noted that, had relator been permitted to vote in the July primary, or if he be permitted to vote in the August primary, there would be no violation of the terms of this statute, though such vote should be pronounced illegal, because he will be a qualified voter at the next general election. The offense, as defined by this article, is not voting in a primary election of a political party before the voter is twenty-one years of age, but in voting at a primary election of a political party when he would not become twenty-one years of age at the next general election. Such construction is placed on this

statute by the case of Calcoat v. State, 37 Tex. Cr. R. 245, 39 S. W. 364.

It is ably and plausibly argued by relator that, inasmuch as the Legislature, in defining the offense of illegal voting by an unqualified voter in a primary election of a political party, made the qualification as to age to rest on the voter's age at the next general election, and not on his age at the time of the primary election, it is a clear recognition by the Legislature of the right of any person, who should become twenty-one years of age previous to the next general election, to participate as a voter in such primary, notwithstanding such person was not twenty-one years of age when he voted in the primary. This position is given added weight from the fact that, in subsequent amendments to the primary election law of 1925, especially the second Terrell election law, enacted in 1905 (Acts 1905, 1st Called Sess., c. 11), there were carved out and defined numerous offenses in respect to the violation of the provisions of such law, yet this enactment was never changed or the offense described in the statute under consideration redefined. In the absence of a civil statute, specifically requiring a voter in a primary election to be twenty-one years of age at the time he offers to vote in a primary election, this position would appeal to us as being sound, because expressive of the legislative intent on this matter. Is there such specific statutory requirement as a qualification for voting in a political primary election?

Under the 1911 codification of the statutes of this state, the article defining the qualifications of a voter was article 2939, R. C. S. One of the provisions of this article required each voter to be twenty-one years of age before he could exercise the right of suffrage. In 1917, the Legislature first gave the right to cast an absentee ballot at any character of election in this state. This legislation was effected by amending said article 2939. The amendment in its first paragraph re-enacted the existing article as to the qualifications of voters, and in the second paragraph provided for absentee voters. The first clause of this paragraph declares that: "Any qualified elector as defined by the statutes of this state, who expects to be absent from the county of his residence, and at any other place in this State, on the day of his election may vote subject to the following conditions. * * *" After setting out the conditions under which an absentee ballot may be cast, the paragraph concludes with the proviso that, "This act shall apply to any and all primary elections only." Chapter 40, p. 62, of the Laws of the First Called Session 35th Legislature (1917).

In 1921, the Legislature again amended said article 2939, re-enacting substantially the same qualifications for an elector, but changing in some material respects the paragraph

giving the right to cast an absentee vote; this paragraph re-enacted that portion of the 1917 amendment which gave the right only to a "qualified elector, as defined by the statutes of this State." Again, it was enacted that "this Act * * * shall apply to any and all primary elections only." Chapter 113, p. 217, General Laws of the 37th Legislature (1921).

In 1923, the Legislature again amended said article 2939 by re-enacting substantially the 1921 amendment, but providing that the right to cast an absentee vote should apply to "any and all elections, including general, special and primary elections." Chapter 149, p. 318, of the General Laws of the 38th Legislature (1923).

The conclusion appears to be inescapable that, under each of these three enactments, controlling absentee voting in a primary election, such right is given only to those who possessed the qualifications of a voter, as set out in the first paragraph of said article 2939, as amended by these three acts of the Legislature. In other words, a member of a political party who desired to cast an absentee vote in a party primary election, under any of these three amendments, must have possessed all of the general qualifications of an elector, as defined by the first paragraph of this statute. As one of these qualifications is that the voter must have attained the age of twenty-one years, neither of these amendments permitted any one to cast an absentee ballot in a party primary election, because of the fact that he would be of such age at the next general election. It is inconceivable that the Legislature intended to provide a different qualification for one casting an absentee vote in a party primary election, than for one casting the vote in person on the day of such primary election.

We therefore conclude that, from the time of the enactment of the 1917 amendment to said article 2939 to the 1925 codification of the statutes, no person had a right to vote in a political primary election unless he possessed all of the qualifications of a general elector, as set out in the first paragraph of said article.

Article 236 of the Penal Code does not define the qualifications of voters, and hence cannot be included in the phrase "any qualified elector as defined by the statutes of this state," as such phrase is used in the statutes under review. The 1925 codifiers of the statutes of this state separated the two general provisions of article 2939, of the 1911 statutes, as amended by the act of 1923, into two separate statutes, one defining the qualifications of an elector, and one giving the right to cast an absentee vote. These articles now carry the numbers, respectively, of 2955 and 2956. Article 2955 defines a qualified elector

substantially as same was defined by article 2939 of the 1911 statutes, but declares that, "The provisions of this article as to casting ballots shall apply to all elections including general, special and primary elections." The only construction to be placed on the quoted provision is that no one may cast a ballot in a primary election unless he has all of the qualifications defined in the preceding provisions of the statute.

This construction is made clear by the succeeding article, 2956, which makes provision for absentee voting. The right to cast an absentee vote in any election is given only to those who were qualified electors "as defined by the statutes of this State." The last clause of this article provides that, "The provisions of this article shall apply to all elections, including general, special and primary elections." In other words, no one can cast an absentee vote in a party primary election unless he has all of the qualifications of an elector, as such qualifications are prescribed in article 2955, supra.

It necessarily follows that respondent performed his duty under the law when he rejected relator's ballot in the recent July primary, and that his duty, as an election judge, will require him to reject relator's ballot in the primary election of August 27, 1932. The application for a writ of mandamus is denied.

Writ of mandamus denied.