## LUCAS v. MCAFEE ET AL.

[No. 27,457.   Filed October 25, 1940.   Rehearing denied October 31, 1940.]

*Wildermuth & Force* and *John W. Wake,* all of Gary (*Ora L. Wildermuth,* of Gary, of counsel), for appellant.

*George E. Hershman* and *Samuel F. Sirois,* both of Crown Point, for appellees.

SHAKE, J.—Lake County comprises a state senatorial district and as such will be entitled to elect two state Senators at the general election to be held on November 5, 1940. At the primary election of May 7, 1940, there were 12 candidates for the state Democratic senatorial nominations. The official returns indicated that the appellee Conroy received 7,347 votes; the appellant, Lucas, 6,990; the appellee McAfee 6,900; and the other candidates lesser numbers. Conroy and Lucas were declared to be the nominees, and McAfee instituted this action for a recount and to contest. The recount did not change the votes received by these candidates sufficiently to affect the result.

The complaint to contest and the evidence, which was stipulated, disclose that on the 28th of April, 1923, the appellant, Lucas, was convicted of conspiracy to violate the National Prohibition Act in the United States District Court for the District of Indiana; that he was sentenced to serve a year and a day in a federal penitentiary and to pay a fine of $1,000; that he served the sentence; that the judgment of conviction was not reversed; and that he had not been pardoned at any time prior to said primary election. It was further stipulated that the appellant was otherwise qualified to be a candidate for and to hold the office of state Senator. Upon this state of the record, the trial court found in favor of the contestor, now the appellee McAfee, and adjudged that he and Conroy were the nominees of their party for said offices. The errors assigned all relate to

the right of the trial court to pass upon the qualifications of the appellant to hold the office of state Senator. The appellee McAfee relies upon § 49-303, Burns' 1933, § 13046, Baldwin's 1934, which provides that:

> "It shall hereafter be deemed an indispensable qualification for persons to hold any office within the state of Indiana, either by election or appointment, that such persons shall never have . . . been convicted of . . . crime against the laws of the United States where the sentence imposed therefor exceeded six (6) months,"

and upon §§ 29-2301 and 29-2302, Burns' 1933 (Supp.), §§ 7428 and 7429, Baldwin's Supp. 1935, by which it is provided that the election "by popular vote to any district, circuit, county, township or municipal office, or the nomination of any person who is declared nominated at a primary election as a candidate for any such office, may be contested" on the ground that "the contestee, previous to such election, shall have been convicted of an infamous crime, such conviction not having been reversed nor such person pardoned at the time of such election."

The appellant asserts, first, that this action is not within the statute because he was not a candidate at said primary for the nomination for a "district, circuit, county, township or municipal office." He contends that a state Senator is a state official and that this action is therefore without the purview of the statute upon which it was predicated. With this conclusion we do not agree. It is true that members of the General Assembly are state officials, though they are elected by the voters of designated districts. Judges of circuit courts and prosecuting attorneys are likewise state officers, and this court has held that the above statute applies to contests of the

election of circuit judges. *Conley* v. *Hile* (1935), 207 Ind. 488, 193 N. E. 95; *Martin* v. *Youngblood* (1937), 211 Ind. 647, 7 N. E. (2d) 997. So far as we are advised, there are no elective district officers in the State of Indiana, and the Legislature must have known that fact when it enacted the contest statute. The statute must be construed as intended to apply to the contest of the nomination and election of public officials chosen by the voters of districts, circuits, counties, townships, and municipal corporations.

The second proposition relied upon by the appellant is that the trial court possessed no jurisdiction to pass upon his qualifications as a candidate for nomination for state Senator. Two provisions of the state Constitution are called to our attention. Section 7 of Article 4 defines the qualifications of members of the General Assembly as follows:

> "No person shall be a Senator or a Representative who, at the time of his election, is not a citizen of the United States; nor any one who has not been for two years next preceding his election, an inhabitant of this State, and, for one year next preceding his election, an inhabitant of the county or district, whence he may be chosen. Senators shall be at least twenty-five, and Representatives at least twenty-one years of age."

Section 10 of Article 4 provides that each house of the General Assembly shall "judge the elections, qualifications, and returns of its own members." It is urged that the statutes rendering persons convicted of certain crimes ineligible to be nominated for or to hold public office unless pardoned, are unconstitutional, in so far as they relate to members of the General Assembly. It is also contended that the courts are without authority to inquire into the qualifications of candidates for membership in the General Assembly.

We shall first consider the effect of § 10 of Article 4, because if it is concluded that inquiries into the qualifications of members of the General Assembly are confined to the bodies to which they are elected, and are without the jurisdiction of the courts, we shall have no need to determine the constitutionality of the statutes which undertake to disqualify persons who have been convicted of crimes.

The right of legislative bodies to judge the elections, qualifications, and returns of their own members is of ancient origin. The history of the doctrine reveals that it was established in the constitutional law of England in the year of 1586, during the reign of Queen Elizabeth. A controversy arose over the election of a member of the House of Commons. The Queen ordered the Speaker to advise the House that it was the prerogative of the Lord Chancellor to determine who had been elected. The decision of the House is indicated by the following historic quotation:

> "Nevertheless, the House appointed a committee to examine into the returns, and this committee reported that they had not thought it proper to inquire of the Chancellor what he had done, because they thought it prejudicial to the privilege of the House to have the same determined by others than such as were members thereof. And though they thought very reverently of the said Lord Chancellor and judges, and knew them to be competent judges in their places; yet in this case they took them not for judges in Parliament in this House."
> —Luce, *Legislative Assemblies* (1924), p. 192.

Provisions guaranteeing this right are to be found in the federal Constitution and in the organic law of every state in the Union, in language substantially if not identically like that employed in ours. See: Thorpe's *American Charters, Constitutions, and Organic Laws* (1909). The right is deemed essential to the enactment

of legislation without interruption and confusion and to maintain a proper balance of authority where the functions of government are divided between coordinate branches. It is no more subject to judicial interference or control than the judicial functions of this court are subject to the dictates of the legislative or executive departments. The Constitution has defined a domain upon which courts may not tread. *Dinan* v. *Swig* (1916), 223 Mass. 516, 112 N. E. 91. It will be assumed, of course, that a legislative body called upon to judge the election, qualifications, or returns of one of its members will exercise that high prerogative in accordance with the Constitution from which the power is derived, but if it fails to do so it is answerable to the people and not to the courts.

The controlling circumstance in this case is that the appellee McAfee has undertaken to invoke the jurisdiction of a court to determine the qualifications of a person seeking a seat in the state Senate. The fact that the controversy arose out of a primary election contest is immaterial so far as the substantial issue is concerned. The answer would necessarily be the same however the question arose. We are only concerned with the validity of the statutes rendering ineligible to hold public office persons convicted of infamous crimes as said statutes apply to the determination of the qualifications of members of the General Assembly. As to these particular officers, the specific terms of the Constitution transcend the statutes and deprive the courts of jurisdiction of the subject-matter.

For want of jurisdiction, the judgment of the trial court is reversed, and the Jasper Circuit Court is directed to set aside said judgment and enter an order of dismissal.

NOTE.—Reported in 29 N. E. (2d) 403.

ON PETITION FOR REHEARING

SHAKE, J.—The appellee McAfee has filed a petition for rehearing, and he calls our particular attention to § 8 of Article 2 of the State Constitution, which provides that:

"The General Assembly shall have power to deprive of the right of suffrage, and to render ineligible, any person convicted of an infamous crime."

This provision is not self-executing, but it has been construed as authorizing the Legislature to enact a statute prohibiting persons convicted of infamous crimes from holding public office, as well as denying such persons the right of suffrage. *Crampton* v. *O'Mara* (1923), 193 Ind. 551, 139 N. E. 360. We perceive no reason why such a statute would not be applicable to members of the General Assembly as well as all other public officers.

If the Legislature has properly added to the constitutional qualifications for membership in the General Assembly, and we think it has, then the question arises as to what tribunal shall determine controversies of fact concerning these qualifications. The appellee McAfee contends that when such controversies arise in connection with a general election, they are for the respective Houses of the General Assembly, but that when they arise out of primaries, they are for the courts. We cannot agree with this conclusion. The Constitution says that each House, when assembled, shall judge the *qualifications* of its own members, not the constitutional qualifications, and not the qualifications other than those prescribed by statute. When the Constitution speaks of qualifications, as applied to membership in the General Assembly, it must be con-

strued that legislative as well as constitutional provisions were contemplated.

Considering that the statute rendering ineligible persons convicted of infamous crimes and § 7 of Article 4 of the Constitution together constitute the law respecting the qualifications of members of the General Assembly, we are yet confronted with the problem that there must be some tribunal with jurisdiction to determine controversies of fact arising out of the application of the law. We think the jurisdiction lies exclusively with the respective Houses of the Legislature as those bodies are constituted at the time such controversies arise. Such matters are no more to be determined by the courts than by the Governor or some administrative agency. The appellee says that our conclusion might permit a ten year old boy, or a nonresident of the district to become the nominee of a party for a seat in the General Assembly. But who is to determine the matter of age or the period of residence? The question is answered by § 10 of Article 4 of the Constitution of Indiana:

> "Each House, when assembled, shall . . . judge the elections, qualifications, and returns of its own members . . ."

The circumstance that the facts were here admitted did not confer upon the court the power to adjudicate an issue that is within the exclusive jurisdiction of the state Senate.

The petition for rehearing is denied.

Tremain, J., dissenting.

NOTE: Reported in 29 N. E. (2d) 588.