STATE EX REL. WATSON *v.* PIGG, JUDGE

[No. 27,806. Filed January 30, 1943.]

24

*Hays & Hays,* of Sullivan, for petitioner.

*Wallace, Randel & Wallace,* and *Norval K. Harris,* all of Sullivan, for respondent.

RICHMAN, C. J.—This is an original action filed by the relator December 4, 1942, while the respondent was judge of the Sullivan Circuit Court. His term of office having expired pending the action an order has this day been entered substituting as respondent Walter F. Wood, the incumbent judge. Action of which complaint is made occurred during Judge Pigg's term of office and he will be referred to herein as the respondent.

The petition for writ of mandate alleges that relator and James McGarvey were opposing candidates for the office of auditor of Sullivan County at the November 3, 1942, election and that the count of the election board showed McGarvey had received the majority of the votes cast; that relator on the 16th day of November filed his "petition for contest and for recount" with written undertaking executed by Thomas Davidson, a freeholder of Sullivan County, as surety for the payment of costs; that at the time of the filing the undertaking was approved by the clerk of the Sullivan Cir-

cuit Court but was not brought to the attention of the judge until the 24th day after the election; that respondent refused to approve the undertaking because it had not been presented to him for approval until more than fifteen days had expired after the date of the election and until after McGarvey, the defendant named therein, had filed a motion to dismiss the proceeding. The petition shows that respondent dismissed the petition for recount assigning as an additional ground that there had been no evidence offered or tendered to prove the sufficiency of the undertaking. However, the petition alleges that the court "at no time after the presentation of said bond to him for approval questioned the sufficiency of the surety." It is further shown that other petitions for recount were pending in the same court. Relator asks that respondent be mandated to approve the undertaking and take such further action as may be required under the 1941 recount statute.

The petition was set for informal hearing and argument in this court and all the parties appeared including respondent and McGarvey who were also represented by counsel. Demurrers and answers to the petition were filed as well as transcript of the proceedings in the Sullivan Circuit Court. Certain oral admissions were made, referred to hereinafter.

It is contended by respondent that there can be no statutory recount separable from a proceeding under the contest statute of 1933 and since no such proceeding is pending and the time for filing one by relator has expired, he is entitled to no relief even though the respondent's action in failing to approve the bond and dismissing the recount petition was erroneous. The first inquiry therefore is as to the means by which a candidate may attack the validity of his opponent's

apparent election on the face of the returns by the canvassing election board. Principally involved are three statutes, Chapter 122 of the Acts of 1941, being §§ 29-2121 to 29-2138, Burns' 1933 (Supp.), §§ 7407-1 to 7407-18, Baldwin's Supp. 1941, hereinafter referred to as the recount statute; Chapter 242 of the Acts of 1933 as amended by Chapters 82 and 223 of the Acts of 1935, being §§ 29-2301 to 29-2309, Burns' 1933 (Supp.), §§ 7427-1 and 7428 to 7435, Baldwin's Supp. 1935, hereinafter referred to as the contest statute; and §§ 814 to 829 of the Civil Code of 1881, Acts 1881, p. 380, as amended in 1893 and 1929, being §§ 3-2001 to 3-2016, Burns' 1933 and §§ 1045 to 1060, Baldwin's 1934, hereinafter referred to as the *quo warranto* statute.

Since the adoption of the code in 1852 at least until 1933 *quo warranto* has been a concurrent remedy with contest for challenging the validity of an election. *State ex rel. Julian* v. *Adams* (1879), 65 Ind. 393, 397; *State ex rel. Waymire* v. *Shay* (1885), 101 Ind. 36. The information or *quo warranto* statute is an enlargement of the common law remedy. Contest is a special statutory proceeding not known at common law. Both now provide for judicial review, although the forum of contest proceedings has not always been a court. For example, the 1881 act provided for four different tribunals, the General Assembly as to state offices, two justices of the peace as to the offices of representative and senator, the board of commissioners as to county and township offices, and the circuit court as to municipal offices. Acts of 1881, p. 498 ff. Contest was available to a candidate as an elector entitled to vote for the person whose election was challenged. The candidate could also use *quo warranto*. *Jones* v. *State ex rel.* (1899), 153 Ind. 440, 55 N. E. 229. In either proceeding where the controversy

was between rival candidates the reviewing body could inspect and count the ballots. *Reynolds* v. *The State, ex rel. Titus* (1878), 61 Ind. 392, 421, *State ex rel. Waymire* v. *Shay, supra.* This was not true in *quo warranto* cases where it was sought to oust an incumbent claiming the right by appointment for an unexpired term and to seat a candidate who held a certificate of election. The incumbent was not permitted to go behind the certificate. *Parmater* v. *The State, ex rel. Drake* (1885), 102 Ind. 90, 3 N. E. 382. See also, *State ex rel. Schrage* v. *Boyle* (1934), 206 Ind. 574, 584, 190 N. E. 743, 747.

Special statutory provisions for recount did not exist until 1881, when five sections of the general election laws were devoted to the subject. Acts of 1881, p. 497. Jurisdiction was given to the circuit court, but with respect to this and all other recount statutes it has consistently and properly been held that most of the duties prescribed therein are ministerial in nature.

With this background the contest statute of 1933 came into existence. After its enactment and in a case where its provisions were under consideration, this court declared: "The statutory procedure for the contest of an election provides a remedy, which is merely cumulative, and it has often been held by this court that it is proper to try title to an office by *quo warranto,* even where a statutory method is prescribed." *State ex rel. Nicely* v. *Wildey et al.* (1935), 209 Ind. 1, 9, 197 N. E. 844, 847. While this declaration was not necessary to the decision, it is an expression of the understanding of the court which was shared as late as 1941 by the General Assembly who in § 5 of the recount statute assumed the present existence of other methods of judicial review than by statutory contest. Because the contest statute repealed all laws in

conflict therewith we are now asked to hold that a candidate "counted out" by the election board has no other means of judicial review. Obviously the act could not repeal the *quo warranto* statute itself, for it may be used to test and apparently is the only remedy by which the right to an appointive office may be tested and is likewise the accepted means by which the sovereign people, independent of any action of elective or appointive aspirants or incumbents, may challenge the right to hold an office. If the *quo warranto* statute itself was not so repealed, the only possible "repealing" effect upon *quo warranto* was to deny its use to one who has an adequate remedy under the later contest statute. In the face of the understanding which has so long existed in Indiana, common to courts and legislatures, that the two are concurrent remedies, we should not hold otherwise unless there be some compelling reason, expressed in or necessarily implied from the 1933 act. No such reason other than the repealing clause has been suggested by the parties and none is found.

There is a diversity of opinion upon this subject in other states, with decisions in perhaps the majority of jurisdictions that contest is exclusive of *quo warranto*, some of which decisions possibly may be distinguished by the fact that the courts were dealing with the common-law action of *quo warranto*. Ann. Cas. 1913E 982, 18 Am. Jur., Elections, § 277. It is also true that our decisions under the laws of 1852 and 1881, if we were now inclined to a different view, might be rationalized by the fact that each of these two General Assemblies in a comprehensive revision of all the statutory remedial law chose to include both actions. When the 1933 contest statute was enacted there was no concurrent re-enactment of the *quo warranto* statute.

But the 1933 Act was not so radically different from previous contest statutes which it repealed, as to evince an intent that it should supersede all existing methods of reviewing the right, by virtue of an election, to hold an office.

The act contained provisions prescribing procedure for recount. But it was not thought by the editors of Burns' Statutes that this inclusion repealed all recount statutes for they were thereafter carried in all revisions until the present time. This court considered them in effect when it noticed them in the case of *State ex rel. Robertson* v. *Circuit Court of Lake Co.* (1939), 215 Ind. 18, 26, 17 N. E. (2d) 805, 809. The General Assembly of 1941 evidently considered them as subsisting for the three separate acts, the recount statutes of 1881, 1911 and 1921 were expressly repealed by the recount statute of 1941. It went further, however, repealing all provisions for recount in any statute, including the contest act of 1933, and stated "that there shall be no law or laws for the recount of votes except as in this act provided."

Holding, as we do, that a candidate may by *quo warranto* test the right of his rival candidate to hold office by virtue of an election, we must also hold that the fact of relator's failure to invoke seasonably the contest statute does not prevent or terminate proceedings he has instituted under the recount statute.

In the reading of many cases incident to the writing of this opinion we have observed expressions to the effect that recount is in the nature of discovery, may or may not be used as an aid to the contest, and does not finally decide the right to hold the office. It seems to have been thought, therefore, that recount is a mere incident to contest and may not be separately pursued. There was some reason for this view in cases where

under the 1933 act both remedies were asked in the same petition and with evident attempt to comply solely with the provisions of that act, but the reason disappeared when by the act of 1941 all recount provisions were eliminated from the act of 1933. It is true that a recount does not necessarily decide the right to an office but we can think of no good reason why the Legislature might not authorize such proceeding entirely independent of any kind of judicial review. Certainly where both proceedings are pending the parties themselves can make the recount determinative by abandoning the contest.

Treated as a means of discovery, the use of the 1941 Act was not limited to those having contests pending, but is available to one desiring to contest or to prepare for a contest and it expressly stated therein: "The term 'contest' as used in this section shall include all forms of contest now or hereafter by law recognized as appropriate means for contesting title to a public office." Acts 1941, pp. 341, 342, § 5.

We think, however, that this act does more than to provide for obtaining evidence to be used in an action for judicial review of the right to hold an elective office. This might have been the purpose of previous recount statutes, for none of them either by their express terms or by judicial construction went farther than to make the certificate of the recount commissioners evidence or "prima facie evidence" of the right to hold the office. The 1941 Act, § 14, besides providing that the "recount certificates shall be prima facie evidence of the votes cast for such office . . . in any contest or other proceeding in which there is an issue as to the votes cast at such election for such office . . ." also contains this significant provision (§§ 15 and 16) that after the recount certificate has been filed with the clerk of the

court he shall determine whether there is a difference between the original and recount returns and he, as to offices voted upon exclusively in his county, and the Secretary of State as to other offices, "shall make his certificate showing the correct total vote for such office . . . and shall transmit such certificate to the officer authorized by law to issue a certificate of election or commission for such office; and the candidate shown by such certificate of the clerk to have reeived the highest number of votes for such office shall be entitled to a certificate of election or commission for such office, notwithstanding one may have been issued upon a previous return or certificate of the total votes cast for such office." This provision was not in the former recount statutes. There was perhaps an equivalent provision in the 1911 Act for recount where voting machines were used. But the 1881 Act, to which the 1921 act was said to be merely supplementary (see, *State ex rel. Robertson* v. *Circuit Court of Lake Co., supra*) permitted the candidate shown by the return of the election board to receive the commission to the office since his certificate of election was not superseded or affected, except by a determination of a contest or *quo warranto* proceeding. Under the present law the commission must issue to the holder of the certificate of the clerk or Secretary of State based upon the result of the recount. If a commission has previously been issued to one shown by the recount to have been defeated, such commission is no longer effective.

In the case of *State ex rel. Nicely* v. *Wildey et al., supra*, p. 9, this court said:

"It cannot be doubted, however, that the legislature has power to provide that the person who receives the certificate of the recount commission,

a ministerial body, shall be entitled to possession of the office pending a judicial determination of the result of the election. Neither can it be doubted that the legislature has full power to provide that the person holding the certificate of the recount commission may be placed in possession of the office by the mandate of a court pending the judicial determination of the contest."

Nor do we doubt that the Legislature has power to determine the effect of a recount upon a commission previously issued, and that the court may mandate issuance of a commission to the one who upon the recount has been shown to be elected. The last commission, as between the rival candidates at the election, is conclusive of the right of the holder thereof to the possession of the office until otherwise determined by judicial review which may or may not be necessary.

The 1941 Act does not provide for such judicial review. By its title it is limited to recount. With the exceptions hereinafter noted all the duties prescribed therein seem to be ministerial. The judge apparently is required to determine that the petition complies with the statute for in § 9 it is provided that he "shall grant such petition . . . and order the recount. . . ." It would seem that he ought to satisfy himself judicially that the proceedings are regular before he makes such an order which in itself is probably a judicial act. When the order is made, including the appointment of the commissioners, they act ministerially pursuant to such order. It is not required that the judge shall preside over or participate in the examination or count of ballots. But by § 13 he is required by order to impound and provide for the protection of ballots and machines and "make the same available to said commission." So, generally, the recount is and necessarily must be under his supervision.

The canvass and return are to be performed by the commission, a ministerial body, whose count supersedes and is substituted for the canvass and return of ▮ another ministerial body, the election board. The statute thus permits a second count (with logical consequences) at leisure, open to the candidates, their "watchers" and "representatives of the press," by persons appointed by a judge who is assumed to be impartial, to supersede the original count made in the haste and excitement of election by boards composed of partisans. All the cost of the recount must be paid by the petitioning candidate or candidates. If the satisfaction of obtaining such a ministerial review is worth the price to the candidate, we see no reason why it should not be granted. If in the course of the proceeding matters are discovered which to either of the parties seems to require judicial review and determination, the remedy of *quo warranto* is available. Unless so reviewed, the result of the recount is final. This does no violence to any principles of public policy nor is it within any inhibition of the Constitution so far as we are now advised.

Disposition of the remaining questions is simple. The statute fixes no time for the filing or approval of the undertaking, except inferentially before the ▮ granting of the petition. Here it was filed when the petition was filed. No form of undertaking is prescribed and no procedure for determining its sufficiency. Mr. McGarvey's attorney, with commendable frankness, admitted at the hearing that the undertaking was in fact sufficient. Respondent said that he did not know that it was good. If he had had any reasonable doubt of its sufficiency he might have asked for evidence or made independent investigation but instead he listened to relator's counsel concerning other

contentions presented, expressed no desire for evidence, which doubtless would have been furnished upon his request, and then dismissed the petition. We do not believe that the act of approval of the undertaking is a judicial act. The statute might have permitted its approval by the clerk, as does the contest statute. Bonds are approved by sheriffs and various other administrative officers. It has never been thought that in so doing they are performing judicial duties. We have examined the petition and the undertaking and find them in substantial compliance with the statute. The action of respondent was arbitrary and unwarranted.

The petition for writ of mandate is granted and the incumbent judge is ordered to reinstate relator's petition, approve the undertaking and take such other steps as are required by the statute under the issues presented by the petition.

NOTE.—Reported in 46 N. E. (2d) 232.