STATE EX REL. GRAMELSPACHER *v.* MARTIN CIRCUIT
COURT ET AL.

[No. 28,934.   Filed September 10, 1952.]

*Nordhoff & Nordhoff,* of Jasper, and *Shake & Shake,* of Vincennes, for relator.

*Remy & Coombs,* of Indianapolis, *Iglehart & Hewins,* of Evansville, *Louis A. Savage,* of Jasper, and *Gray & Wadley,* of Petersburg, for respondents.

BOBBITT, J.—This original action for mandate and prohibition arises out of the assumption of jurisdiction under the provisions of the Indiana Election Code (Acts 1945, ch. 208, Art. 27), §§29-5401 to 29-5417, Burns' 1949 Replacement, by the Martin Circuit Court and the Judge thereof of a primary election recount and contest proceedings, and the ordering of a recount and appointing commissioners to recount the votes cast in Martin County, Indiana, in the primary election held on May 6, 1952 for the nomination on the Democratic ticket for the office of joint representative in the Indiana General Assembly of and from Dubois and Martin Counties.

The proceedings in the trial court were instituted by one Frank J. Seng who, according to the certificate of the canvassing board, received a lesser number of votes for said nomination than did the relator herein who was certified by said board as the nominee. Upon the petition of relator we issued a temporary writ prohibiting further proceedings and ordering respondents to show cause why said temporary writ should not be made permanent.

The sole question presented is: Are the recount sections of the Indiana Election Code (Acts 1945, ch. 208, Art. 27, *supra*) in so far as they purport to authorize a recount of the votes cast in the primary election for the nomination of joint representative in the General Assembly of Indiana unconstitutional in that they violate Art. 4, §10 of the Indiana Constitution?—i.e., Can the Legislature confer upon the courts jurisdiction of a recount and contest proceeding in a primary election, involving candidates for nomination for the Indiana General Assembly?

By instituting the recount proceedings in the court below, the petitioner Seng sought the intervention and invoked the jurisdiction and authority of the judicial branch of the government. *State ex rel. Watson* v. *Pigg, Judge* (1943), 221 Ind. 23, 46 N. E. 2d 232; *State ex rel. Claffey* v. *Goett* (1946), 224 Ind. 391, 68 N. E. 2d 497.

Art 4, §10 of the Indiana Constitution provides in relevant part as follows: "Each House, when assembled, shall . . . judge the elections, qualifications, and returns of its own members. . . ." Said article does not provide or say that each House, when assembled, shall judge the *nomination,* election, qualifications, and returns of its own members, or the qualifications and returns of *nominees* for members of the Legislature.

An examination of the Debates in Indiana Convention 1850 fails to disclose any mention of primary elections or nominations in discussions or resolutions pertaining to the election and seating of members of the General Assembly. It seems clear to us that the word "election" as used in said Art. 4, §10, refers only to "general" and not "primary" elections.

There can be no question of eligibility, qualifications, or returns of a *member* before the Legislature for de-

termination until a nominee, who was duly elected in the general election, presents himself for admission to one of its bodies.

This is not an action to determine either the election, eligibility, qualifications, or returns of relator as a member of the Legislature. The sole question here presented is the right of the petitioner Seng to have the court, through the appointment of recount commissioners, determine his rights, if any, to the *nomination* on his party's ticket for the office of joint representative from Dubois and Martin Counties.

This is not, as in *State ex rel. Acker* v. *Reeves* (1951), 229 Ind. 126, 95 N. E. 2d 838, and in *State ex rel. Beaman* v. *C. Ct. Pike Co.; Gibson Co.* (1951), 229 Ind. 190, 96 N. E. 2d 671, a proceeding to test the title to an office but is one to test the right to be a candidate (nominee) for an office—the right to stand for election.

The primary election is the initial step in our election system looking to the nomination of candidates whose names are to appear on the official ballot in the general election. It takes the place of party nominating conventions. 18 Am. Jur., Elections, §146, pp. 275, 276. It is a separate and distinct step (election) to determine the nominees of political parties for various offices to be voted for in the general election. The results of the primary election as finally determined are final and conclusive in the determination of this question.

Nomination in a primary election is in no sense an election to an office. *Martin* v. *Schulte* (1933), 204 Ind. 431, 182 N. E. 703. Relator herein is not yet elected a member of the Legislature. If nominated he is then only placed in a position to be elected as a member if he gets the required number of votes in the November (general) election.

A successful prosecution of the proceedings in the trial court would result in the substitution of Seng's name for that of relator on the ballot in the general election, but it would not result in his being seated as a member of the House of Representatives in the Indiana General Assembly unless he is subsequently duly·elected in the general election, and his election, qualifications, and returns are approved by the House when he presents himself for admission thereto. These circumstances sufficiently establish the fact that in passing upon the recount petition filed herein the trial court is not attempting to judge the election, qualifications, or returns of a member of the Legislature. This can only be done by the Legislature.

*State ex rel. Acker* v. *Reeves* (1951), 229 Ind. 126, 95 N. E. 2d 838, *supra; State ex rel. Beaman* v. *C. Ct. Pike Co.; Gibson Co.* (1951), 229 Ind. 190, 96 N. E. 2d 671, *supra.*

All the court is asked and required to do in the proceeding herein, is to determine which of two persons was nominated as the candidate of a political party for the office of joint representative. It is not requested or required to judge or pass upon the election, qualifications or returns of a member of the Legislature, and any judgment rendered by the trial court herein would be a binding judgment, finally fixing the rights between the relator and Seng as to which of the two was nominated and as to whose name should appear on the ballot to be voted for in the general election.

Seng does not, and could not, seek an order of the court directing the House to recognize him as the duly elected member of that body. He seeks only a determination of his rights to have his name placed upon the ballot in lieu of relator's in order that he might stand for election in the general election to be held in No-

vember, and the procedure which he has undertaken to follow is his only available remedy. The Legislature has properly provided this remedy and the trial court should be permitted to exercise its jurisdiction to administer it.

A "primary election" is the statutory vehicle for choosing candidates by political parties, for the various offices to be filled in the general election, and, while an integral part of our election system, is not an "election" within the meaning of Art. 4, §10, of the Indiana Constitution. The Legislature may, therefore, confer upon the courts jurisdiction of recounts and contests involving nomination for members of the Legislature in primary elections. *Kelso* v. *Cook* (1916), 184 Ind. 173, 110 N. E. 987; *Leu* v. *Montgomery* (1914), 31 N. D. 1, 148 N. W. 662; *State ex rel. Cloud* v. *Election Board* (1934), 169 Okla. 363, 36 P. 2d 20, 94 A. L. R. 1007. See also: *Davis* v. *Stahl* (1941), 287 Ky. 629, 154 S. W. 2d 736; *People ex rel. Lindstrand* v. *Emmerson* (1929), 333 Ill. 606, 165 N. E. 217, 62 A. L. R. 912; *Tucker* v. *Bagby* (1932), Tex. Civ. App., 52 S. W. 2d 801.

Relator relies upon the cases of *Lucas* v. *McAfee* (1940), 217 Ind. 534, 29 N. E. 2d 403, 588; *State ex rel. Acker* v. *Reeves, supra;* and *State ex rel. Beaman* v. *C. Ct. Pike Co.; Gibson Co., supra,* in support of his contention that the trial court is without jurisdiction to entertain a petition for recount of votes involving the nomination in a primary election for the office of a member of the General Assembly. These cases correctly state the law as it applies to questions involving the election, qualifications, and returns of members of the Legislature when such questions arise out of general elections. The Acker and Beaman cases were concerned only with this question and are clearly dis-

tinguishable from the case at bar. For the reasons above stated, the doctrine of the Lucas case, wherein the trial court was prohibited from considering the qualifications of a candidate for nomination for State Senator, should not be extended to prohibit a recount of votes for the nomination for a legislative office in the primary election.

The temporary writ of prohibition is dissolved and a permanent writ denied.

Draper, J., dissents with opinion, in which Gilkison, J., concurs.

## DISSENTING OPINION

DRAPER, J.—The problem presented should be approached with diffidence, keeping in mind the fact that the purpose of the constitutional provision is to maintain inviolate the integrity of the legislative branch of the government, free from any encroachment by the executive or judicial branches, and to safeguard the untrammeled functioning of the legislative branch without interruption, confusion or embarrassment.

The fact that the Debates in Indiana Convention 1850 discloses no mention of primary elections furnishes no assistance and is certainly not controlling. Primary elections were practically unheard of at that time. As said in *United States* v. *Classic* (1940), 313 U. S. 299, 85 L. Ed. 1368, 61 S. Ct. 1031:

> "We may assume that the framers of the Constitution . . . did not have specifically in mind the selection and elimination of candidates for Congress by the direct primary any more than they contemplated the application of the commerce clause to interstate telephone, telegraph and wireless communication which are concededly within it. But in determining whether a provision of the Constitution applies to a new subject matter, it is

of little significance that it is one with which the framers were not familiar. For in setting up an enduring framework of government they undertook to carry out for the indefinite future and in all the vicissitudes of the changing affairs of men, those fundamental purposes which the instrument itself discloses. Hence we read its words, not as we read legislative codes which are subject to continuous revision with the changing course of events, but as the revelation of the great purposes which were intended to be achieved by the Constitution as a continuing instrument of government."

That the statutory provisions under consideration are wholly ineffective to authorize the pursuit of such proceedings in connection with general elections of legislative candidates, as distinguished from primary elections, is well settled in this jurisdiction. *State ex rel. Acker* v. *Reeves* (1951), 229 Ind. 126, 95 N. E. 2d 838; *State ex rel. Beaman* v. *C. Ct. Pike Co.; Gibson Co.* (1951), 229 Ind. 190, 96 N. E. 2d 671. This court concluded in those cases that by Article 4, §10 of our Constitution sole and exclusive jurisdiction to determine the results of a general election of legislative candidates is vested in the House of the General Assembly, and that the statutory provisions under consideration are, to the extent they provide otherwise, unconstitutional and void.

Primary elections are no longer "family affairs." The days when a political party could frame its own rules and devise its own machinery for the selection of nominees for public office are long since past. The enormous growth of city populations and the complexity of modern political life furnished such opportunities for fraud, corruption and close control that primary elections have generally been provided for, regulated and controlled by statute. It is now well

established that a primary election is an *integral part* of our election system, and not merely a means whereby each political party determines for itself who its candidates will be at the general election. The right of a qualified voter to register his choice of candidates at such an election is a fundamental constitutional right. *State ex rel. Buttz* v. *Marion Cir. Ct.* (1947), 225 Ind. 7, 72 N. E. 2d 225, 170 ALR 187; *United States* v. *Classic, supra; Smith* v. *Allwright* (1943), 321 U. S. 649, 88 L. Ed. 987, 64 S. Ct. 757; *State* v. *Zimmerman* (1946), 249 Wis. 237, 24 N. W. 2d 504.

A question involving the qualifications of a legislative candidate who appeared to have been nominated in a primary election arose in *Lucas* v. *McAfee* (1940), 217 Ind. 534, 540, 29 N. E. 2d 403, 588. In that case Lucas was declared nominated in the Democratic primary election to be one of the two candidates for the Indiana Senate from Lake County. He received more votes than did McAfee, who thereupon filed an action for recount and contest in which he relied on the provisions of Burns' 1933, §49-303 which prohibits any person from holding office if he has been convicted of a crime, and on §29-2301, which provides that an election contest may be had on the ground that the contestee had theretofore been convicted of an infamous crime.

This court there held that by Article 4, §10 of our Constitution exclusive jurisdiction to determine the qualifications of a candidate for the General Assembly was vested in the respective Houses of the Legislature; that the courts have no jurisdiction thereof; and the fact that the controversy arose out of a primary election contest was immaterial. We there said:

"The controlling circumstance in this case is that the appellee McAfee has undertaken to in-

voke the jurisdiction of a court to determine the qualifications of a person seeking a seat in the state Senate. The fact that the controversy arose out of a primary election contest is immaterial so far as the substantial issue is concerned. The answer would necessarily be the same however the question arose. . . . As to these particular officers, the specific terms of the Constitution transcend the statutes and deprive the courts of jurisdiction of the subject-matter."

In denying a petition for rehearing, the court said that only the Legislature could determine controversies of fact arising out of the application of the law, and continued:

"The appellee McAfee contends that when such controversies arise in connection with a general election, they are for the respective Houses of the General Assembly, but that when they arise out of primaries, they are for the courts. We cannot agree with this conclusion."

While the matter of a recount was not then before this court, the principle which ruled that case seems to be of assistance here. The courts may not engage in a proceeding which has for its purpose the determination of the qualifications of a contestant in a primary election. If, as that case expressly holds, the constitutional provision prohibits a judicial inquiry into the qualifications of a legislative candidate at a primary election, there would seem to be no valid reason why the same provisions would not prohibit judicial inquiry into the eligibility of such candidate for legislative office insofar as the purity of such primary election or the votes cast thereat are concerned.

An election is an integrated process. The primary election is an essential forerunner of the general election. It is an indispensable and inseparable part and parcel thereof. It is an element without which an

election would be incomplete. A general election cannot be held unless candidates have been nominated. If, as it appears, the primary election is an integral part of our election machinery, and so is essential to the completeness thereof, it is difficult to see how the judicial branch of our government may isolate any one component part from another part, and exercise an authority as to one which in its very nature must vitally affect and perhaps dominate the whole. In some jurisdictions opposition in the general election is so feeble that the candidate nominated in the primary, or perhaps in a "run-off" primary, is always elected. In some of the counties of this state nomination is generally tantamount to election.[1] If the nomination of legislative candidates, particularly in those counties, can be finally determined in a proceeding in which the authority of the judicial branch has been invoked and exercised, the right to judge the election of such candidates would seem to have been effectively removed from the domain of the legislative branch, in which it is exclusively placed by Article 4, §10 of our Constitution.

I do not understand the petitioner below as even contending that the courts can do so. He insists that the appropriate House of the General Assembly is the final judge regardless of what part has been given to the courts to play, and the legislature has the power, he says, "to either adopt or reject the findings of the

---

[1] Dubois and Martin Counties are involved here. Under the legislative apportionment acts of 1879, 1885, 1891 and 1921, the counties of Dubois and Martin constituted a joint representative district entitled to one representative in the General Assembly, and in every general election held since 1879 in which a joint representative for such joint district was elected, 23 in number, the nominee of the Democratic Party was elected.

recount commission *or any determination made by the court in the event of a judicial determination."* (emphasis supplied)

If that be true, and I think it is true, the effect of the legislation under consideration would be to impose upon the judicial department of government the investigation of a matter not resulting in a binding judgment, not finally fixing the rights of parties, and not ultimately determining a state of facts; an activity in which the judicial branch is not required to engage. *Dinan* v. *Swig* (1916), 223 Mass. 516, 112 N. E. 91.

Judgments of courts are not "tentative." They are not, or at least should not be, idle ceremonies or futile proceedings. Under Art. 3, §1 of our Constitution, which marks the separation of the legislative, the executive and the judicial departments of the government, it does not lie within the power of the legislative branch to set aside, vacate, annul or ignore the final judgment of a court acting within its jurisdiction.

It seems to me that a fair recognition of and adherence to the equal division of governmental functions would require courts to leave all questions involving the elections, qualifications and returns of legislative candidates entirely to the legislature. In the Beaman case, supra, we said only last year that "if the effect of said Art. 27 is not an adjudication of the election and returns of members of the Legislature it approaches so near thereto that it may interfere with the constitutional right of each house of the Legislature to judge the elections and returns of its members." I think it would be appropriate to say the same in this case.

I do not, of course, mean to intimate that the votes cast for legislative candidates at a primary election may not be reexamined, their validity redetermined

and their number retabulated. I do think that such a proceeding is beyond the scope of the legitimate activity of the courts while they are acting judicially.

Gilkison, J., concurs.

NOTE.—Reported in 107 N. E. 2d 666.