LARRY F. WHEATLEY *vs.* SECRETARY OF THE
COMMONWEALTH & another.[1]

Barnstable. June 10, 2003. - August 5, 2003.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Constitutional Law,* Elections, General Court, Separation of powers. *Elections,*
Recount. *General Court. Secretary of the Commonwealth. Practice, Civil,*
Election case, Relief from judgment. *Judgment,* Relief from judgment.

In a civil action in which a judge ordered that a new election be held, which
order entered after the House of Representatives had taken up the matter
and had seated a person other than the plaintiff, Mass. R. Civ. P. 60 (b),
365 Mass. 828 (1974), entitled the defendant to relief from the judge's
order, in that the unreviewable decision of the House of Representatives,
which has the final authority to decide who it will seat as a member, made
the order moot. [853-856]

CIVIL ACTION commenced in the Superior Court Department on
December 18, 2002.

The case was heard by *Richard F. Connon,* J., and a motion
for relief from judgment was also heard by him.

The Supreme Judicial Court granted an application for direct
appellate review.

*Peter Sacks,* Assistant Attorney General (*Mary O'Neil,* As-
sistant Attorney General, with him) for Secretary of the
Commonwealth.

*William A. McDermott, Jr.* (*Ann Marie Johnnene* with him)
for Matthew C. Patrick.

*Richard M. Russell* (*Edward F. O'Brien, Jr.,* with him) for the
plaintiff.

COWIN, J. Acting pursuant to its powers under Part II, c. 1,
§ 3, art. 10, of the Massachusetts Constitution, to "be the judge
of the returns, elections, and qualifications of its own members,"
the House of Representatives determined that Matthew C.

---

[1]Matthew C. Patrick.

Patrick was duly elected the representative from the Third Barnstable Representative District in the November, 2002, election. We are asked to determine whether a judge's order that a new election be held, an order that entered *after* the House had taken up the matter, may stand. We decide that it may not, and we therefore vacate the judgment.

1. *Facts.* The facts are not disputed. An election for State representative to the General Court from the Third Barnstable Representative District was held on November 5, 2002. Patrick, the incumbent, appeared to be the winner, by twelve votes. Petitions for recount were timely filed on behalf of Larry F. Wheatley, the challenger, and on behalf of Patrick. On November 20, 2002, the Acting Governor and the Executive Council, pursuant to G. L. c. 54, § 115,[2] examined the records of votes cast and the Secretary of the Commonwealth, acting pursuant to G. L. c. 54, § 135,[3] issued a district-wide recount order. This recount was held on November 23 and 25, 2002.[4] Patrick's lead increased to seventeen votes. The Secretary again transmitted the returns to the Acting Governor and Council for examination

---

[2]General Laws c. 3, § 1, requires the Secretary to lay before the Governor and the Executive Council "the copies of records of votes cast for representatives to the general court."

General Laws c. 54, § 115, provides, in relevant part:

"The state secretary shall lay before the governor and council the copies of the votes cast. After such delivery, the governor, with at least five councillors, shall examine the copies. They shall tabulate said votes and determine who appear to be elected . . . and shall forthwith transmit to the state secretary an abstract of such tabulation and determination. . . . In case of a state-wide or district-wide recount under section one hundred and thirty-five, the state secretary shall in like manner lay before the governor and council the copies of the amended records received by him under said section, and the governor with at least five councillors shall, if necessary, revise the aforesaid tabulation and determination accordingly."

[3]General Laws c. 54, § 135, provides that, in the case of district-wide recounts, a petition for recount is filed with the Secretary, who holds the petition until the official tabulation by the Governor and the Executive Council is made. The petition is "void" unless the difference in votes cast for any candidate and the apparent winner is not more than one-half of one per cent of the total number of votes cast. The statute requires the Secretary to order the recount as soon "as it appears to him that the difference in votes is within the margin specified." There is no dispute that the difference in votes in this case was within the statutory margin.

[4]The Third Barnstable District spans several towns. Under G. L. c. 54,

pursuant to G. L. c. 54, § 115, and certification pursuant to G. L. c. 54, § 116.[5] The Acting Governor issued Patrick a certificate of election on December 18, 2002.

Wheatley filed this action in the Superior Court the same day that the Acting Governor issued the certificate of election. In his complaint, Wheatley alleged irregularities in the November 5 election and asked the judge to set aside that election and order a new one. He also sought to enjoin the Secretary from transmitting to the sergeant-at-arms of the General Court the records of votes cast. See G. L. c. 3, § 1. A judge in the Superior Court (who acted conscientiously and expeditiously throughout) held an evidentiary hearing on December 27, 2002. He denied injunctive relief but, in a memorandum dated December 30, 2002, ordered a new election.

In his memorandum, the judge found three voting irregularities, which he believed cast doubt on the outcome of the election. First, thirteen voters in a Bourne precinct received ballots containing candidates for the wrong district, resulting in votes for representative being counted as blank. Second, one voting location ran out of ballots, causing a thirty-five minute delay during which some three dozen people left the voting area. Third, eight absentee ballots cast contained candidates for the wrong district, resulting in votes counted as blank. The judge concluded that these were statutory violations and, given the close vote, the judge concluded that they "could realistically have influenced the outcome of the election." He therefore ordered that a new election be held at the earliest possible date but no sooner than sixty days from entry of judgment. Judgment (styled a declaratory judgment pursuant to G. L. c. 231A) entered January 16, 2003.

On January 1, 2003, the House of Representatives assembled for the 2003-2004 session. Patrick presented the certificate of election issued to him by the Acting Governor. Performing his

§ 135, each town in a district-wide recount may set the date of the recount. (Both Patrick and Wheatley in writing waived the three-day notice requirement of the statute.)

[5]General Laws c. 54, § 116, provides, in relevant part: "The governor shall, in the presence of at least five councillors, certify to the results of the examination of the copies of the records of votes cast for . . . representatives in the general court, and shall issue his summons to such persons as appear to be chosen to said offices."

duties under G. L. c. 54, § 117, and G. L. c. 3, § 1,[6] the Secretary presented the results of the election to the House on the same day. The House referred the return of votes in the election to a special committee. That committee ordered that Patrick be seated as a holdover until the House made its determination as to the duly elected representative. See art. 64 of the Amendments to the Constitution of the Commonwealth, as amended by art. 82 (terms of representatives extend until successors are chosen and qualified).

The special committee held a hearing on January 13, 2003, at which the two candidates and their attorneys participated. In addition, the committee had in its possession the pleadings, exhibits, and transcripts of the Superior Court proceedings in this case. On March 18, 2003, the committee issued a majority report recommending that Patrick be seated and a minority report recommending (a) that the House allow the Superior Court order to stand or (b) that the House ask this court whether it has jurisdiction to decide the matter and, if it does, then (c) that the House order a new election. The House debated the matter on March 20, 2003, and voted to seat Patrick.[7]

The next day, the Secretary (making essentially the same arguments he makes to this court) moved for relief from judgment pursuant to Mass. R. Civ. P. 60 (b) (4), (b) (5), and (b) (6),

---

[6] "After [certification of the results of the examination pursuant to G. L. c. 54, § 116], such copies shall be replaced in their respective envelopes and delivered with the certificate of examination to the state secretary, who shall on the first Wednesday in January lay the same, with schedules showing the number of ballots cast for each person voted for, before the senate and house of representatives." G. L. c. 54, § 117.

"On or before the Tuesday next preceding the first Wednesday of January following a state election [the Secretary] shall deliver to the sergeant-at-arms a certified copy of the list of the persons who appear to be elected as representatives to the general court as shown on the certificate of examination of the copies of the records of votes cast as tabulated by the governor and council . . . . The state secretary shall also transmit to the house of representatives as soon as the members are called to order a certified copy of each certificate of examination of the copies of records of votes cast as tabulated by the governor and council and transmitted to him." G. L. c. 3, § 1.

[7] "*Resolved,* That Matthew C. Patrick of Falmouth was duly elected the Representative to the General Court from the Third Barnstable District in the election held on November 5, 2002, and that he is entitled to and is hereby given the seat allocated for that district now occupied by him."

365 Mass. 828 (1974). The judge denied this motion on May 1, 2003. The Secretary appealed, and the parties stipulated to a stay of the order for a new election. We granted the Secretary's application for direct appellate review.

2. *Discussion.* As the Secretary failed to appeal from the original January 16 judgment, the only question before us is whether rule 60 (b) entitles the Secretary to relief from the judge's election order in the wake of the decision of the House to seat Patrick.[8] General Laws c. 56, § 59, grants the Superior Court both the jurisdiction to enforce the various laws regulating the conduct of elections and the power to grant equitable relief to those injured by violations of those laws.[9] Although § 59 was enacted in 1946, see St. 1946, c. 537, § 11, the judiciary's power to provide a remedy for persons harmed by defects in election procedures was recognized as far back as the beginning of the Nineteenth Century. See *Coffin* v. *Coffin*, 4 Mass. 1, 35 (1808) ("an elector illegally deprived of his right of voting, may demand redress for this wrong against the selectmen by a suit at law"). A court's power to remedy election irregularities, however, has a limitation: Part II, c. 1, § 3, art. 10, provides that "[t]he house of representatives shall be the judge of the returns, elections, and qualifications of its own members . . . ." This language is as old as the Constitution itself, having remained unchanged since that document was adopted by the people in June of 1780. Despite this long history, however, the parties differ significantly as to the meaning of art. 10. In the opinion of the Secretary, the article grants the House the final authority to decide who it will seat as a member. Wheatley, on the other hand, reads art. 10 to reserve for the House only the ability to count the returns of a valid election. He argues that

---

[8]Our opinion also considers the Secretary's claim for relief from the judgment only on the precise facts, sequence of events, and procedural history presented. We express no opinion whether any differences in those facts, sequence of events, or procedural history might have affected the outcome of these proceedings, and we do not consider what ramifications (if any) might flow from preliminary orders that were not issued in this case.

[9]General Laws c. 56, § 59, states in pertinent part: "The supreme judicial court and the superior court department of the trial court shall have jurisdiction of civil actions to enforce the provisions of chapters fifty to fifty-six, inclusive, and may award relief formerly available in equity or by mandamus."

when a court, pursuant to § 59, declares an election to be invalid, the House may not act to seat a member.

Our precedent indicates that the Secretary's position is the correct one. The House's role as the sole arbiter of a petitioner's claim to a seat as a representative is by now firmly settled as a matter of State constitutional law. See *Opinion of the Justices*, 375 Mass. 795, 815 (1978) ("The constitutional authority of each branch of the Legislature to judge the elections, returns, and qualifications of its members is exclusive, comprehensive, and final"); *Greenwood* v. *Registrars of Voters of Fitchburg*, 282 Mass. 74, 79 (1933) ("Jurisdiction to pass upon the election and qualification of its own members is thus vested exclusively in the House of Representatives"); *Dinan* v. *Swig*, 223 Mass. 516, 517 (1916) ("The power to pass upon the election and qualification of its own members thus is vested exclusively in each branch of the General Court. No other department of the government has any authority under the Constitution to adjudicate upon that subject"). The House has exercised this authority on numerous occasions. See generally Reports of Contested Elections Cases in the Senate and House of Representatives of the Commonwealth of Massachusetts for the Years 1886-1902 (1902); Reports of Controverted Elections in the Senate and House of Representatives of the Commonwealth of Massachusetts from 1853 to 1885 Inclusive (1886).

Although the judiciary may, under § 59, order that a certificate of election issue to a particular individual, that certificate is nothing more than evidence that a candidate may present to the House in support of a claim of election. See *Greenwood* v. *Registrars of Voters of Fitchburg, supra* at 80 ("The certificate . . . has served its purpose . . . of directing the attention of the House of Representatives to the question whether the intervenor is entitled to be declared a representative"); G. L. c. 3, § 4. The House, and only the House, has jurisdiction to resolve such a claim. Where, as in this case, there is no allegation of a violation of Federal law, "[n]o other department of the government has any authority under the Constitution to adjudicate upon that subject." *Dinan* v. *Swig*,

*supra* at 517.[10] Contrast *Bond* v. *Floyd*, 385 U.S. 116, 131-132 (1966) (legislative refusal to seat candidate for criticizing United States policy in Viet Nam and the Selective Service laws held to violate First Amendment to the United States Constitution).

Wheatley's contention that art. 10 has been abrogated by language contained in art. 101 of the Amendments to the Massachusetts Constitution is incorrect. Article 101, § 1, states that the "[t]he manner of calling and conducting the elections for the choice of representatives, and of ascertaining their election, shall be prescribed by law." This language was originally included in art. 21 of the Amendments to the Massachusetts Constitution in 1857 (predating virtually all of our cases interpreting art. 10) and does nothing more than provide a constitutional basis for our modern statutory election system. It does not impinge on the House's power under art. 10 to seat its own members. See *Dinan* v. *Swig, supra* at 517 ("General phrases elsewhere in the Constitution, which in the absence of an explicit imposition of power and duty would permit the enactment of laws to govern [elections], cannot narrow or impair the positive declaration of the people's will that this power [to pass on elections] is vested solely in the Senate and House respectively"). Nor does the fact that art. 10 was formulated before the advent of direct elections of State representatives[11] render its provisions inapplicable. Article 10, like all constitutional provisions, describes "a broad and general principle of government, regulative of all conditions arising in the future and falling within its terms." *Opinion of the Justices*, 261 Mass. 523, 543-544 (1927). The principle at issue here, namely the Legislature's "exclusive, comprehensive, and final" jurisdiction "to judge the elections, returns, and qualifications of its

---

[10]At oral argument Wheatley cited *Akizaki* v. *Fong*, 51 Haw. 354 (1969), for the proposition that the courts, rather than the Legislature, have jurisdiction to resolve election disputes. Although the Constitution of Hawaii does contain a provision similar to our art. 10, see art. III, § 12, of the Constitution of Hawaii, it also contains a provision stating that "[c]ontested elections shall be determined by a court of competent jurisdiction . . . ." Art. II, § 10, of the Constitution of Hawaii. This provision, which has no parallel in the Constitution of the Commonwealth, renders the *Akizaki* case inapposite.

[11]Prior to 1857, State representatives were selected indirectly by town meetings and municipal officers. See *Opinion of the Justices*, 10 Gray 613, 615 (1858).

members," *Opinion of the Justices,* 375 Mass. 795, 815 (1978), citing *Dinan* v. *Swig, supra,* is as applicable to members elected directly by the people as it was to members selected indirectly by local representatives.

The House's unreviewable decision to seat Matthew C. Patrick (potential election irregularities notwithstanding) has resolved the question of who shall represent the Third Barnstable Representative District during the 2003-2004 session of the House of Representatives. It follows that a new election would be an exercise in futility: even if Wheatley were to win, the House's decision to seat Patrick would still stand. This change in circumstance made the order for a new election moot. The case is therefore remanded to the Superior Court with instructions to vacate the January 16, 2003, order requiring a new election.

*So ordered.*